**Reverse and Render and Opinion Filed January 21, 2022**



**In the**
**Court of Appeals**
**Fifth District of Texas at Dallas**

No. 05-20-00058-CV

**KEN PAXTON, IN HIS OFFICIAL CAPACITY AS ATTORNEY GENERAL OF THE STATE OF TEXAS, AND THE STATE OF TEXAS,**
**Appellants/Cross-Appellees**
**V.**
**ARNIEKA SIMMONS, Appellee/Cross-Appellant**

**On Appeal from the 68th Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. DC-18-07822**

## OPINION

Before Justices Reichek, Nowell, and Carlyle
Opinion by Justice Carlyle

Appellants/cross-appellees the Texas attorney general and the State of Texas challenge the trial court's denial of their plea to the jurisdiction and granting of summary judgment against them in this lawsuit arising from a no-answer default judgment in a landlord–tenant dispute. In a cross-issue, appellee/cross-appellant Arnieka Simmons requests remand regarding attorney's fees.

We reverse the trial court's denial of appellants' plea to the jurisdiction and render judgment dismissing Ms. Simmons's claims against them for lack of subject

matter jurisdiction. Because we conclude our appellate jurisdiction is limited to that matter, we address no other issues.

## Background

In August 2016, Ms. Simmons rented an apartment (the apartment) in a Dallas County apartment complex. One year later, believing the lease term had ended, she moved out of the apartment, surrendered both the apartment key and the mailbox key, and notified the U.S. Postal Service of her change of address. She made no further rent payments and never returned to the apartment.

In November 2017, the landlord filed a forcible detainer and non-payment of rent action against Ms. Simmons in a Dallas County justice court. The landlord sought possession of the apartment and unpaid rent from August 2017 through November 2017, plus court costs. The landlord's petition indicated that Ms. Simmons's only known address was the apartment. After unsuccessfully attempting to serve Ms. Simmons at that location, the constable requested alternative service pursuant to Texas Rule of Civil Procedure 510.4(c). TEX. R. CIV. P. 510.4(c). In accordance with that rule's provisions, the justice court judge authorized service by (i) delivering a copy of the citation to the apartment by "placing it through a door mail chute" or "securely affix[ing] the citation to the front door or main entry" and

(ii) mailing a copy to the premises.[1] *See id.* 510.4(c)(3). The return of service was filed with the justice court on November 13, 2017.

Ms. Simmons did not appear in the justice court lawsuit. On November 16, 2017, that court rendered a default judgment against her, awarding the landlord possession of the apartment and $3,221.22 in rent, plus court costs and interest. A copy of the default judgment was mailed to the apartment. At some point after the time period for perfecting an appeal to county court had expired, Ms. Simmons learned of the default judgment in the course of applying for a mortgage.

On June 12, 2018, Ms. Simmons filed this lawsuit seeking declaratory and injunctive relief against the landlord, the State of Texas, and, in their official capacities only, the justice court judge and Texas attorney general.[2] She challenged the constitutionality of rule 510.4(c) and Texas Property Code § 24.0051(a), which, according to Ms. Simmons, together provide that nail-and-mail service is procedurally sufficient to support a default judgment in a landlord's lawsuit against a tenant for possession of the premises and unpaid rent. *See id.*; TEX. PROP. CODE § 24.0051(a).[3] She contended the alternative service of process authorized by those

---

[1] The parties refer to this as "nail-and-mail" service.

[2] The landlord and justice court judge are not parties to this appeal.

[3] The current version of property code § 24.0051(a), which was last amended in 2012, states:

> In a suit filed in justice court in which the landlord files a sworn statement seeking judgment against a tenant for possession of the premises and unpaid rent, personal service on the tenant or service on the tenant under Rule 742a, Texas Rules of Civil Procedure, is

–3–

provisions "is not reasonably calculated to give defendants notice of pending claims for monetary relief."[4]

The petition also asserted, among other things, (i) this is "a suit seeking a declaratory judgment that a state agent is acting pursuant to an unconstitutional law"; (ii) "[s]overeign immunity is waived by the Declaratory Judgments Act because this is a suit challenging the validity of a state statute," *see* TEX. CIV. PRAC. & REM. CODE §§ 37.001–.011 (Uniform Declaratory Judgments Act); (iii) "[t]he existence of the void judgment not only inflicts ongoing damage on Plaintiff in terms of damage to her credit reputation but also continuously puts her at risk that a writ to enforce the judgment may be issued"; and (iv) the justice court judge "is the official charged

---

procedurally sufficient to support a default judgment for possession of the premises and unpaid rent.

TEX. PROP. CODE § 24.0051(a). Though this section refers to rule of civil procedure 742a, that rule was repealed in 2013. According to the rules' "Historical Notes" regarding rule 742a, the subject matter of that rule is now addressed in rule 510.4. *See* TEX. R. CIV. P. 742a (repealed by order of April 15, 2013, effective August 31, 2013).

[4] Ms. Simmons also filed with her petition the form statutorily required when challenging a state statute's constitutionality. *See* TEX. GOV'T CODE § 402.010. Section § 402.010 states:

> (a) In an action in which a party to the litigation files a petition, motion, or other pleading challenging the constitutionality of a statute of this state, the party shall file the form required by Subsection (a-1). The court shall, if the attorney general is not a party to or counsel involved in the litigation, serve notice of the constitutional challenge and a copy of the petition, motion, or other pleading that raises the challenge on the attorney general either by certified or registered mail or electronically . . . .
> . . . .
> (d) This section or the state's intervention in litigation in response to notice under this section does not constitute a waiver of sovereign immunity.

*Id.*; *see also* TEX. CONST. art. V, § 32 (permitting legislature to require court to provide notice to attorney general of constitutional challenge).

with issuing any writs of execution or garnishment, as well as any abstracts of judgment, which may flow from the judgment."

Ms. Simmons's petition requested declarations that "Section 24.0051(a) of the Texas Property Code in combination with Texas Rule of Civil Procedure 510.4(c) is facially (or in the alternative, as applied) unconstitutional, unenforceable, and invalid under both the Texas and United States Constitutions" and "the void default judgment rendered in the underlying case may not be enforced by any writ of execution, writ of garnishment, turn-over procedure, or other collection mechanism." As to injunctive relief, she sought "a permanent injunction against [the landlord] enjoining any effort to enforce the invalid judgment" and requested that "the State of Texas, or any of its agents" be enjoined from acting to "enforce the void judgment rendered against her pursuant to Section 24.0051(a)" or "[g]enerally, implement Section 24.0051(a) or enforce judgments rendered pursuant to it." Additionally, she sought attorney's fees under civil practice and remedies code § 37.009. *See id*. § 37.009 (allowing award of attorney's fees in declaratory judgment actions).

Appellants filed a joint plea to the jurisdiction challenging the trial court's subject matter jurisdiction as to the claims against them. Appellants contended, among other things, that Ms. Simmons lacks standing because she has not alleged an injury "fairly traceable to the Attorney General" and "her injuries cannot be redressed by the relief requested against the State of Texas or its Attorney General."

Additionally, appellants asserted (i) the UDJA is "merely a procedural device for deciding cases already within a court's jurisdiction"; (ii) a declaratory judgment "requires a judicial controversy as to the rights and status of parties actually before the court for adjudication, and the declaration sought must actually resolve the controversy"; and (iii) Ms. Simmons's lack of standing as to the State and attorney general precludes her from relying on the UDJA's sovereign immunity waiver as to those defendants.

In her response to appellants' plea to the jurisdiction, Ms. Simmons asserted, among other things:

> Plaintiff readily admits that under the unique circumstances of this case, identifying which of the government defendants is the right one is difficult. . . . Because Plaintiff's target is the unconstitutional statute, and not any of the specific government defendants themselves, she asserts no explicit preference as to which government defendant(s) is/are identified as being a necessary [sic] so long as her challenge to the statute can proceed. Plaintiff has thus joined all three possible government defendants and takes no categorical position on which must remain but only that at least one must. However, because all parties that have a claim or interest in the statute must be joined under the DJA, the proper and most prudent course is to retain all the defendants in that action.

She also stated (i) "[t]he State of Texas, via its legislature, directly passed the challenged statute and thus appears to have the most relevant connection to defending the constitutionality of that law"; (ii) "[w]hile the Attorney General may have no traditional 'enforcement' authority over the statute, the Attorney General is constitutionally tasked with defending the laws (including the statutes) of the State

of Texas" and "can serve as a representative party on behalf of the State when a statute is challenged and standing/the proper party does not hinge on a statutory enforcement analysis"; and (iii) "[h]owever, to the extent that 'enforcement authority' of an entity is germane to a proper-party analysis in this case, the [justice court judge] is the most applicable entity."

Several months later, Ms. Simmons filed a traditional motion for partial summary judgment against all defendants on her declaratory and injunctive relief claims. Appellants filed a response in which they restated their standing and sovereign immunity arguments without addressing Ms. Simmons's arguments regarding the constitutionality of nail-and-mail service.

Following a hearing, the trial court signed a November 15, 2019 interlocutory order denying appellants' plea to the jurisdiction and granting Ms. Simmons's summary judgment motion in part. The trial court declared (i) § 24.0051(a) and rule 510.4(c) "are UNCONSTITUTIONAL to the extent they authorize a default judgment for monetary relief on the basis of service under [rule 510.4(c)], unless the defendant has previously made an appearance in the case," and (ii) "the money award part of the default judgment (including the court costs) rendered against Plaintiff . . . is VOID."

Appellants filed a December 12, 2019 interlocutory appeal to this Court challenging the denial of their plea to the jurisdiction. Because their notice of interlocutory appeal was not filed within the allowed 20-day time period, *see* TEX.

–7–

R. APP. P. 26.1(b), 28.1, they also filed a motion for extension of time to file the notice of appeal.

While appellants' extension motion in this Court was pending, the trial court held a December 17, 2019 hearing on Ms. Simmons's attorney's fees claim and signed a December 20, 2019 "Amended Final Judgment." Appellants filed a January 14, 2020 notice of appeal of the December 20, 2019 judgment, which is the appeal before us. At the same time, appellants also filed a motion to dismiss their December 12, 2019 interlocutory appeal, which this Court granted. *See Paxton v. Simmons*, No. 05-19-01528-CV, 2020 WL 428147 (Tex. App.—Dallas Jan. 28, 2020, no pet.) (mem. op.).[5]

The trial court's December 20, 2019 judgment states:

> The Court hereby **RENDERS** judgment for Plaintiff. This Court's interlocutory Order and Opinion, entered on November 15, 2019, is fully incorporated into this judgment and remains in full force and effect. The Court now **ORDERS** that Plaintiff recover the following:
>
> 1. Plaintiff shall recover attorney fees ~~in the amount of $~~ Not _____ from Defendants the State of Texas and Ken Paxton, in his official capacity as Attorney General of the State of Texas, jointly and severally, for the prosecution of this case through this judgment and thereafter. The court reserves the right to modify this decision if an intervening is filed in this case by these Defendants
> 2. Costs of Court, jointly and severally, from all Defendants.

---

[5] This Court had granted appellants' motion for extension of time to file a notice of appeal in cause number 05-19-01528-CV on December 23, 2019, and deemed that interlocutory appeal timely filed.

The judgment also (i) awards Ms. Simmons appellate attorney's fees in the event of any defendant's unsuccessful appeal and (ii) states, "This final judgment disposes of all claims and all parties, and is appealable. All relief not granted is denied."[6]

## Appellate jurisdiction

"Usually, only final judgments are subject to appeal." *Alexander Dubose Jefferson & Townsend LLP v. Chevron Phillips Chem. Co., L.P.*, 540 S.W.3d 577, 581 (Tex. 2018) (per curiam) (citing *Hinde v. Hinde*, 701 S.W.2d 637, 639 (Tex. 1985) (per curiam)). "In addition, a judgment's finality determines whether an appellant invoked a court's appellate jurisdiction by timely filing a notice of appeal." *Id*. at 581–82. Absent a timely filed notice of appeal from a final judgment or appealable interlocutory order, we do not have jurisdiction over an appeal. *See Lehmann v. Har-Con Corp.*, 39 S.W.3d 191, 195 (Tex. 2001).

A judgment is final for purposes of appeal if it disposes of all parties and claims in the record. *Id*. at 195; *see also Sherer v. Sherer*, 393 S.W.3d 480, 486 (Tex. App.—Texarkana 2013, pet. denied) (judgment "cannot be final as to some issues but not other issues"). "Because the law does not require that a final judgment be in any particular form, whether a judicial decree is a final judgment must be determined from its language and the record in the case." *Lehmann*, 39 S.W.3d at 195; *see also Jack M. Sanders Family Ltd. P'ship v. Roger T. Fridholm Revocable Living Tr.*, 434

---

[6] Ms. Simmons timely requested findings of fact and conclusions of law. The record does not show any were issued.

S.W.3d 236, 240 (Tex. App.—Houston [1st Dist.] 2014, no pet.) (question of whether appellate jurisdiction exists cannot be waived or settled by agreement of parties).

Additionally, "[a] judgment must be sufficiently definite and certain to define and protect the rights of all litigants, or it must provide a definite means of ascertaining such rights, to the end that ministerial officers can carry the judgment to execution without ascertainment of facts not therein stated." *Steed v. State*, 183 S.W.2d 458, 460 (Tex. 1944); *accord Hinde*, 701 S.W.2d at 639. "[A] judgment cannot condition recovery on uncertain events, or base its validity on what the parties might or might not do post-judgment." *Hinde*, 701 S.W.2d at 639; *cf. Grishman v. Sims*, No. 05-17-01057-CV, 2018 WL 3616883, at *2 (Tex. App.—Dallas July 30, 2018, no pet.) (mem. op.) ("A judgment settling all legal issues and rights between the parties, however, may be final and appealable even if further proceedings may be necessary for purposes of its execution or an incidental or dependent matter remains to be settled.").

A person may appeal from an interlocutory order that grants or denies a plea to the jurisdiction by a governmental unit. TEX. CIV. PRAC. & REM. CODE § 51.014(a)(8). Though a notice of appeal generally must be filed within 30 days after a judgment is signed, "in an accelerated appeal, the notice of appeal must be filed within 20 days after the judgment or order is signed." TEX. R. APP. P. 26.1; *see also* TEX. R. APP. P. 28.1 (interlocutory appeal allowed by statute constitutes accelerated appeal). An appellate court may extend the time to file a notice of appeal

if, within 15 days after the filing deadline, the party files the notice of appeal and a motion requesting an extension. TEX. R. APP. P. 26.3.

We begin by addressing together both sides' challenges to the December 20, 2019 judgment's finality. Each side's position focuses on the portion of the judgment containing the judge's handwritten edits. That portion states:

> Plaintiff shall not recover attorney fees from Defendants the State of Texas and Ken Paxton, in his official capacity as Attorney General of the State of Texas, jointly and severally, for the prosecution of this case through this judgment at this point. The court reserves the right to modify this decision if an intervention is filed in this case by those Defendants.

Ms. Simmons asserts in her cross-issue, "This Court should reverse the [December 20, 2019] final judgment in part as to trial court attorney fees because the judgment fails to dispose of that issue." According to Ms. Simmons, "Although the judgment is a 'final judgment' because it has a *Lehmann* statement, . . . it should not be a final judgment because it leaves claims unresolved."[7] She states, "The judgment, while final for appellate review, does not actually dispose of all the issues because the trial court reserved the right to modify the judgment based on appellants' possible future acts." She contends, "[T]he appropriate step to correct a 'final' judgment that does not dispose of all the issues in the case is to remand the non-final portion of the judgment back to the trial court for a full and final resolution of those

---

[7] With regard to the term "a *Lehmann* statement," Ms. Simmons cites the following dictum from *Lehmann*: "A statement like, 'This judgment finally disposes of all parties and all claims and is appealable,' would leave no doubt [as to judgment finality]." *Lehmann*, 39 S.W.3d at 206.

issues." Thus, she asserts, "this Court should reverse that portion of the judgment, remand the issue of trial court attorneys' fees to the trial court for a full determination, and affirm the remaining bulk of the judgment in full."

Though appellants contended in their appellate reply brief that the December 20, 2019 judgment is final and appealable, they abandoned that position in a letter brief filed four days before oral submission to this Court. In their letter brief, they assert for the first time that this Court "lacks appellate jurisdiction over at least some of the parties' issues because the trial court's judgment was not final and appealable." Appellants argue (i) "the judgment does not dispose of Simmons's claim for attorneys' fees against Appellants" because "the court expressly reserved its right to award trial-level fees based on a possible future event," and (ii) "boilerplate language at odds with the substance of the court's order cannot establish finality."

Additionally, appellants contend that though the December 20, 2019 judgment "was not final," it constituted "an order denying Appellants' plea to the jurisdiction." They argue this Court "should imply a motion for extension of time" as to their January 14, 2020 notice of appeal—which was filed within five days after the 20-day accelerated appeal deadline—and "conclude that Appellants filed a timely interlocutory appeal from the order denying their plea to the jurisdiction." According to appellants, "That means that only the portion of the trial court's order denying the plea is properly before this Court—not Appellants' purported appeal of the constitutional ruling or Simmons's cross-appeal." Appellants assert that if we

–12–

conclude their January 14, 2020 appeal was untimely, we should dismiss both their appeal and Simmons's cross-appeal for want of jurisdiction.

Generally, an "intervention" is filed by a nonparty voluntarily seeking to become a party in a pending suit. *E.g.*, *In re H.G.*, 267 S.W.3d 120, 122 n.1 (Tex. App.—San Antonio 2008, pet. denied). Here, the record suggests the trial court's use of the phrase "if an intervention is filed in this case" instead referred to the possibility that appellants might at some point after the judgment's signing assert a defense to the constitutionality of the challenged statute and rule, which they had not done up to that time.[8]

Nevertheless, the trial court's handwritten edits resulted in a judgment that conditions recovery on uncertain events and is based on what the parties might or might not do post-judgment. *See Hinde*, 701 S.W.2d at 639. Also, the potential modification the judgment contemplates is not incidental to settled legal issues and rights, but instead, as Ms. Simmons states in her appellate reply brief, "is a significant judicial decision." Thus, the December 20, 2019 judgment is not sufficiently definite. *See id*.; *Steed*, 183 S.W.2d at 460.

---

[8] At the December 17, 2019 attorney's fees hearing, the trial court stated:

> [Appellants] filed a plea to the jurisdiction. And declined the opportunity to intervene on many, many occasions even though they had attorneys here. . . . [A]t that point it seemed to me kind of unfair to award this against the State of Texas since they agreed that this is unconstitutional. . . . The State of Texas now seems to be indicating that . . . we're now going to take the position that . . . this is constitutional, for whatever reason that is.

At the hearing's conclusion, the trial court stated, "[I]f there is some way for me to award some kind of conditional trial court fees if the attorney general changes their position, I'm willing to do that if there's some legal authority that allows me to do that."

To the extent Ms. Simmons contends the judgment's statement that "[t]his final judgment disposes of all claims and all parties, and is appealable" automatically makes the judgment final, we disagree. The *Lehmann* dictum she cites does not purport to address a circumstance where, as here, the judgment's substance directly conflicts with that statement. *See Lehmann*, 39 S.W.3d at 206. Our supreme court has instructed that "[c]lear and unequivocal language that reflects an intent to dispose of the entire case is given effect, but when there is doubt about finality, the record resolves the issue." *In re R.R.K.*, 590 S.W.3d 535, 541 (Tex. 2019) (cleaned up). Here, as Ms. Simmons asserts in her appellate reply brief, the trial court "must make further determinations before the issues are finally disposed of." On this record, we conclude the December 20, 2019 judgment is not final and appealable. *See id.*; *Lehmann*, 39 S.W.3d at 195.

Though appellants' January 14, 2020 notice of appeal was filed more than 20 days after the trial court's December 20, 2019 interlocutory ruling and thus did not comply with rule 26.1(b), it was filed within rule 26.3's 15-day "grace period." *See City of Dallas v. Hillis*, 308 S.W.3d 526, 529 (Tex. App.—Dallas 2010, pet. denied). "Under *Verburgt v. Dorner*, 959 S.W.2d 615, 617 (Tex. 1997), we imply a motion to extend time to file notice of appeal under these circumstances." *Id.*; *see Hone v. Hanafin*, 104 S.W.3d 884, 886 (Tex. 2003) (per curiam). The inquiry then becomes whether appellants have furnished a reasonable explanation for the untimely filing. *Hillis*, 308 S.W.3d at 529 (citing TEX. R. APP. P. 10.5(b)(1)(C)). Under this standard,

any conduct short of deliberate or intentional noncompliance qualifies as a reasonable explanation. *Id*. at 529–30.

The record shows appellants originally appealed the trial court's November 15, 2019 interlocutory order denying their plea to the jurisdiction, but moved to dismiss that appeal when they believed the December 20, 2019 judgment had replaced that order. Appellants assert they incorrectly believed the December 20, 2019 judgment was final and could be appealed within 30 days. We accept this as a reasonable explanation and grant appellants' implied motion for extension. *Id*.; *see Christus Health Se. Tex. v. Broussard*, 267 S.W.3d 531, 533–34 (Tex. App.—Beaumont 2008, no pet.) ("A party's mistaken belief that no extension was required because the notice of appeal was timely reasonably explains the failure to file a motion for an extension of time."). Thus, appellants' interlocutory appeal of the denial of their plea to the jurisdiction is properly before this Court.

### Appellants' plea to the jurisdiction

We review the trial court's ruling on a plea to the jurisdiction de novo. *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 228 (Tex. 2004); *City of Plano v. Hatch*, 584 S.W.3d 891, 895 (Tex. App.—Dallas 2019, no pet.). In performing this review, we do not look to the merits of the case but consider only the pleadings and evidence relevant to the jurisdictional inquiry. *Consumer Serv. All. of Tex., Inc. v. City of Dallas*, 433 S.W.3d 796, 802 (Tex. App.—Dallas 2014, no pet.).

A plea to the jurisdiction is a dilatory plea that contests the trial court's authority to determine the subject matter of the cause of action. *Tarrant Cty. Coll. Dist. v. Sims*, 621 S.W.3d 323, 327 (Tex. App.—Dallas 2021, no pet.) (citing *Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 554 (Tex. 2000)). A plea to the jurisdiction may challenge the pleadings, the existence of jurisdictional facts, or both. *Tex. Dep't of Criminal Justice v. Rangel*, 595 S.W.3d 198, 205 (Tex. 2020). When a plea to the jurisdiction challenges the pleadings, we must determine if the pleader has alleged sufficient facts to demonstrate affirmatively the trial court's jurisdiction to hear the cause. *See Ryder Integrated Logistics, Inc. v. Fayette Cty.*, 453 S.W.3d 922, 927 (Tex. 2015) (per curiam); *Hatch*, 584 S.W.3d at 895. To make this determination we look to the pleader's intent, construe the pleadings liberally in favor of jurisdiction, and accept the allegations in the pleadings as true. *Hatch*, 584 S.W.3d at 895. If the pleadings affirmatively negate the existence of jurisdiction, then a plea to the jurisdiction may be granted without allowing the plaintiff an opportunity to amend. *Miranda*, 133 S.W.3d at 226–27.

A plaintiff's standing to assert a claim "is implicit in the concept of subject-matter jurisdiction, and subject-matter jurisdiction is essential to the authority of a court to decide a case." *In re Abbott*, 601 S.W.3d 802, 807 (Tex. 2020) (orig. proceeding) (per curiam); *Farmers Tex. Cty. Mut. Ins. Co. v. Beasley*, 598 S.W.3d 237, 240 (Tex. 2020). The standing doctrine identifies suits appropriate for judicial resolution and assures there is a real controversy between the parties that will be

determined by the judicial determination sought. *Patel v. Tex. Dep't of Licensing & Regulation*, 469 S.W.3d 69, 77 (Tex. 2015). Courts assess standing on a claim-by-claim basis. *See Heckman v. Williamson Cty.*, 369 S.W.3d 137, 150 (Tex. 2012). If a plaintiff lacks standing to assert a claim, the court lacks jurisdiction over that claim and must dismiss it. *Id*.

The Texas Supreme Court has adopted the standard for standing articulated by the United States Supreme Court. *See Abbott v. Jenkins*, No. 05-21-00733-CV, 2021 WL 5445813, at *6 (Tex. App.—Dallas Nov. 22, 2021, no pet. h.) (mem. op.). "To establish standing, a plaintiff must show: (1) an injury in fact, which is concrete and particularized and actual or imminent, not conjectural or hypothetical; (2) that is fairly traceable to the defendant's conduct; and (3) that is likely to be redressed by the requested relief." *Id*. (citing *Heckman*, 369 S.W.3d at 154–55); *accord Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992) (stating that Supreme Court's cases "have established that the irreducible constitutional minimum of standing contains [those] three elements," which are "an indispensable part of the plaintiff's case"). "[T]o challenge a statute, a plaintiff must [both] suffer some actual or threatened restriction under the statute and contend that the statute unconstitutionally restricts the plaintiff's rights." *Patel*, 469 S.W.3d at 77 (cleaned up). The standing determination is made by looking to the plaintiff's pleadings, and the mere fact that a plaintiff may not ultimately prevail on the merits of the lawsuit does not deprive the plaintiff of standing. *Beasley*, 598 S.W.3d at 241.

The UDJA provides a means by which a person whose "rights, status, or other legal relations are affected by a statute" may "have determined any question of construction or validity arising under the . . . statute . . . and obtain a declaration of rights, status, or other legal relations thereunder." TEX. CIV. PRAC. & REM. CODE § 37.004(a). Section 37.006 states:

> (a) When declaratory relief is sought, all persons who have or claim any interest that would be affected by the declaration must be made parties. . . . .
>
> (b) In any proceeding that involves the validity of a municipal ordinance or franchise, the municipality must be made a party and is entitled to be heard, and if the statute, ordinance, or franchise is alleged to be unconstitutional, the attorney general of the state must also be served with a copy of the proceeding and is entitled to be heard.

*Id*. § 37.006.

"A plaintiff bringing suit under the [UDJA] must still properly invoke the trial court's subject matter jurisdiction." *Sw. Elec. Power Co. v. Lynch*, 595 S.W.3d 678, 683 (Tex. 2020) (citing *Tex. Ass'n of Bus. v. Tex. Air Control Bd*., 852 S.W.2d 440, 444 (Tex. 1993) (explaining that UDJA is a "procedural device for deciding cases already within a court's jurisdiction" and does not permit courts to render advisory opinions)); *see also Brooks v. Northglen Ass'n*, 141 S.W.3d 158, 163–64 (Tex. 2004) ("A declaratory judgment requires a judicial controversy as to the rights and status of parties actually before the court for adjudication, and the declaration sought must actually resolve the controversy.").

State employees acting in their official capacities generally have sovereign immunity from suit. *See Tex. S. Univ. v. Villarreal*, 620 S.W.3d 899, 904 (Tex. 2021). "For claims challenging the validity of ordinances or statutes, however, the [UDJA] requires that the relevant governmental entities be made parties, and thereby waives immunity." *City of El Paso v. Heinrich*, 284 S.W.3d 366, 373 n.6 (Tex. 2009) (citing TEX. CIV. PRAC. & REM. CODE § 37.006(b)); *see Wichita Falls State Hosp. v. Taylor*, 106 S.W.3d 692, 697–698 (Tex. 2003) ("[I]f the Legislature requires that the State be joined in a lawsuit for which immunity would otherwise attach, the Legislature has intentionally waived the State's sovereign immunity.").

Though appellants' appellate briefing asserted multiple jurisdictional challenges, appellants stated during oral submission in this Court that they have abandoned all jurisdictional challenges except lack of standing. Appellants contend, "Because neither the State nor the Attorney General caused Simmons's alleged injury or have any role enforcing the challenged statute or rule, Simmons lacks standing to sue Appellants." Appellants also argue Ms. Simmons's lack of standing precludes her from relying on the UDJA's waiver of sovereign immunity.

Ms. Simmons contends that because § 37.006(a) requires that "all persons who have . . . any interest that would be affected by the declaration must be made parties," *see* TEX. CIV. PRAC. & REM. CODE § 37.006(a), both appellants are "necessary parties" and thus subject to the UDJA's waiver of sovereign immunity. She asserts (i) "the State of Texas is a real party in interest because the Texas

–19–

Legislature itself adopted the nail-and-mail statute" and (ii) the attorney general "is and was interested in the outcome of the UDJA declaration on the statute as much as any other governmental entity."[9]

We disagree with Ms. Simmons's position. Section 37.006 itself belies that interpretation, as Ms. Simmons's reading would render meaningless § 37.006(b)'s provision that "if the statute . . . is alleged to be unconstitutional, the attorney general of the state must also be served with a copy of the proceeding and is entitled to be heard." *See Holt v. Tex. Dep't of Ins.–Div. of Workers' Comp.*, No. 03-17-00758-CV, 2018 WL 6695725, at *5 (Tex. App.—Austin Dec. 20, 2018, pet. denied) (mem. op.) ("Reading section 37.006(b) as requiring the State itself to be made a party in every case involving a constitutional challenge to a statute would render meaningless the distinction made by the legislature in its choice of language."); *see also id*. at *6 ("It would make little sense for the legislature to have enacted [Texas Government Code § 402.010] if the State through the Attorney General was a necessary party in all suits that involve a challenge to a statute's constitutionality.").

Next, Ms. Simmons argues that even if appellants are not "necessary parties" pursuant to § 37.006(a), she can invoke the UDJA's sovereign immunity waiver because she has met the relevant test for standing generally. Specifically, she contends the three-prong *Lujan* standard for standing described above does not apply

---

[9] To the extent Ms. Simmons's argument relies on statements in appellants' appellate briefing regarding "the doctrine of virtual representation," we note that appellants stated during oral submission that they have abandoned that portion of their argument.

here. Instead, according to Ms. Simmons, "[T]he standing analysis for a challenge to a statute is a separate, two prong standard: To challenge a statute a plaintiff must both [1] suffer some actual or threatened restriction under the statute and [2] contend that the statute unconstitutionally restricts the plaintiff's rights." In support of that contention, she cites *Patel*, 469 S.W.3d at 77, and *Barshop v. Medina County Underground Water Conservation District*, 925 S.W.2d 618, 626 (Tex. 1996). She asserts she has satisfied both prongs of that two-prong standard. Additionally, Ms. Simmons asserts she has also satisfied *Lujan*'s requirements, citing *Allstate Insurance Co. v. Abbott*, 495 F.3d 151 (5th Cir. 2007).

We disagree with Ms. Simmons's position that *Lujan*'s three-prong standard for standing is inapplicable when the constitutionality of a statute is challenged. The cases she cites, *Patel* and *Barshop*, do not state that *Lujan*'s three-prong standard has been replaced in this context, nor do they address the *Lujan* standard at all. Further, other cases involving constitutional challenges to statutes demonstrate that the principles Ms. Simmons cites from *Patel* and *Barshop* coexist with and do not diminish the three-prong *Lujan* standard. *See Ector Cty. All. of Bus. v. Abbott*, No. 11-20-00206-CV, 2021 WL 4097106, at *8, *10 (Tex. App.—Eastland Sept. 9, 2021, no pet.) (mem. op.) (citing both *Lujan*'s three-prong standard and *Patel*'s principle regarding challenge to constitutionality of statute as applicable law); *In re K.L.*, 553 S.W.3d 703, 707 (Tex. App.—Houston [14th Dist.] 2018, no pet.) (same); *Good Shepherd Med. Ctr., Inc. v. State*, 306 S.W.3d 825, 832–33 (Tex. App.—Austin 2010,

–21–

no pet.) (same). We conclude *Lujan*'s three-prong standard for standing is applicable in this case. *See Lujan*, 504 U.S. at 560 (stating its three-prong standard establishes "the irreducible constitutional minimum of standing").

Nor do we agree with Ms. Simmons that *Allstate* is instructive here. In that case, Allstate Insurance Company sued the Texas attorney general in state court under the UDJA to challenge the constitutionality of a Texas statute regarding car repair shops. 495 F.3d at 154–55. The statute was enforced through a private right of action for insureds to sue their insurer. *Id*. at 157. The attorney general removed the case to federal court, which waived the Eleventh Amendment immunity a state normally has when sued in federal court. *Id*. at 158.

Before reaching the merits, the Fifth Circuit addressed the attorney general's challenge to standing. The Fifth Circuit noted that in order to satisfy the Constitution's Article III "case or controversy requirement," Allstate had to satisfy all three *Lujan* elements. *Id*. at 158 (citing *Lujan*, 504 U.S. at 560). Then, the Fifth Circuit discussed how the attorney general's immunity waiver impacted its analysis of whether those elements had been satisfied:

> A case brought against a state officer in his official capacity is essentially a suit against the state. While the states are immune from suit under the Eleventh Amendment, *Ex parte Young* allows a plaintiff to avoid this bar by naming a state official for the purpose of enjoining the enforcement of an unconstitutional state statute. In turn, *Young* requires that "[i]n making an officer of the state a party defendant in a suit to enjoin the enforcement of an act alleged to be unconstitutional, . . . such officer must have some connection with the

–22–

enforcement of the act, or else it is merely making . . . the state a party." . . .

. . . [T]he state removed this case to federal court and thereby waived its Eleventh Amendment immunity. Therefore, because it is unnecessary to employ the fiction of *Young* to defeat the state's immunity, the connection between the state officer named in the suit and the enforcement of [the challenged statute] is irrelevant to our standing analysis. Rather, the state is the real party in interest.

Because the state itself is a party, causation and redressability are easily satisfied in this case. Causation is satisfied because the state passed . . . a law which threatens Allstate with private civil law suits and civil penalties if it continues with its business plan to acquire additional . . . body shops. A declaration of unconstitutionality directed against the state would redress Allstate's injury because it would allow Allstate to avoid these penalties and lawsuits. Accordingly, we are satisfied that a genuine case or controversy exists.

*Id*. at 159–60 (footnote citations omitted).

*Allstate* also distinguished the Fifth Circuit's decision in *Okpalobi v. Foster*, 244 F.3d 405, 426–29 (5th Cir. 2001) (en banc), which the *Allstate* defendants cited in support of their argument that causation and redressability were lacking. The Fifth Circuit stated in *Allstate*:

In *Okpalobi*, we considered whether a district court had properly enjoined the operation and effect of a Louisiana state tort statute which made abortion providers liable to patients in tort for any damage occasioned by abortions. We concluded that because the named defendants (the Governor and the Attorney General) had caused no injury to the plaintiffs and could never themselves cause any injury under the private civil scheme, the plaintiffs failed to fulfill Article III's case and controversy requirement.

*Okpalobi* does not control this case. . . . Because neither the authority of the Louisiana Governor nor Attorney General extended to enforcing the provision challenged by the *Okpalobi* plaintiffs, the Eleventh Amendment remained a bar to the suit. Our standing analysis was thus limited to an examination of whether causation and

–23–

redressability could be linked to the enforcement connection the Governor and Attorney General had with the statute.

*Allstate*, 495 F.3d at 159.

*Allstate* differs from the case before us in that its analysis specifically focused on considerations pertaining to the attorney general's waiver of Eleventh Amendment immunity. By contrast, two recent cases analyzing standing absent any Eleventh Amendment waiver considerations have found *Okpalobi*'s "enforcement connection" analysis properly applicable. *See Ector Cty. All. of Bus.*, 2021 WL 4097106, at *10 (concluding, in bar owners' challenge to COVID-19 restrictions issued under Texas Disaster Act, that traceability requirement of standing was not met where "[plaintiff] did not plead that the Governor or the State ever threatened to enforce any executive order [issued under the challenged statute], and the Governor and the State have conceded that they do not have the authority to do so"); *Lewis v. Governor of Ala.*, 944 F.3d 1287, 1299 (11th Cir. 2019) (concluding, in employees' challenge to constitutionality of statute voiding local laws requiring employers to pay higher than minimum wage, that *Lujan*'s traceability and redressability requirements were not met as to claims against attorney general where plaintiffs did not show attorney general was enforcing complained-of statute or had authority to do so). We find those cases persuasive and adopt that reasoning here. *See Lewis*, 944 F.3d at 1300–01 (rejecting broad concept of traceability advanced by plaintiffs that would allow Alabama attorney general to be sued in challenges regarding "most

provisions of Alabama law," and observing that record showed other potential defendants with obvious causal connection existed).

As described above, Ms. Simmons's petition asserted (i) this is "a suit seeking a declaratory judgment that a state agent is acting pursuant to an unconstitutional law"; (ii) "[t]he existence of the void judgment not only inflicts ongoing damage on Plaintiff in terms of damage to her credit reputation but also continuously puts her at risk that a writ to enforce the judgment may be issued"; and (iii) the justice court judge "is the official charged with issuing any writs of execution or garnishment, as well as any abstracts of judgment, which may flow from the judgment."

In her response to appellants' plea to the jurisdiction, Ms. Simmons stated (i) "[t]he State of Texas, via its legislature, directly passed the challenged statute and thus appears to have the most relevant connection to defending the constitutionality of that law"; (ii) "[w]hile the Attorney General may have no traditional 'enforcement' authority over the statute, the Attorney General is constitutionally tasked with defending the laws (including the statutes) of the State of Texas" and "can serve as a representative party on behalf of the State when a statute is challenged and standing/the proper party does not hinge on a statutory enforcement analysis"; and (iii) "[h]owever, to the extent that 'enforcement authority' of an entity is germane to a proper-party analysis in this case, the [justice court judge] is the most applicable entity." She also stated she "asserts no explicit preference as to which government defendant(s) is/are identified as being a necessary [sic] so long as her

challenge to the statute can proceed" and "has thus joined all three possible government defendants and takes no categorical position on which must remain but only that at least one must."[10]

Nothing in Ms. Simmons's pleading demonstrates any enforcement connection between the challenged provisions and the State or the attorney general. *See Ector Cty. All. of Bus.*, 2021 WL 4097106, at \*10. Construing Ms. Simmons's pleading liberally in favor of jurisdiction and accepting the allegations in the pleading as true, we cannot conclude she alleged sufficient facts to show the necessary standing element of traceability. *See id.* Further, her pleading affirmatively negates the existence of jurisdiction and thus an opportunity to replead is not warranted. *See Miranda*, 133 S.W.3d at 226–27. We conclude the trial court erred by denying appellants' plea to the jurisdiction.

We reverse the trial court's order denying appellants' plea to the jurisdiction and dismiss Ms. Simmons's claims against them for lack of subject matter jurisdiction. This appeal's interlocutory nature precludes us from addressing any other issues.

200058f.p05

/Cory L. Carlyle/
CORY L. CARLYLE
JUSTICE

---

[10] In this same vein, Ms. Simmons asserted during oral submission before this Court, "[T]he [UDJA] requires us to include [appellants] in the lawsuit. And if we hadn't then we would have just been in the potential situation where everybody recognized that this statute is unconstitutional, but we didn't add the one government defendant that we need, and then we get poured out on appeal. . . . It just didn't make any sense to do that."

–26–



## Court of Appeals
## Fifth District of Texas at Dallas

## JUDGMENT

KEN PAXTON, IN HIS OFFICIAL CAPACITY AS ATTORNEY GENERAL OF THE STATE OF TEXAS, AND THE STATE OF TEXAS, Appellants/Cross-Appellees

No. 05-20-00058-CV          V.

ARNIEKA SIMMONS,
Appellee/Cross-Appellant

On Appeal from the 68th Judicial District Court, Dallas County, Texas Trial Court Cause No. DC-18-07822. Opinion delivered by Justice Carlyle. Justices Reichek and Nowell participating.

In accordance with this Court's opinion of this date, we **REVERSE** the trial court's denial of appellants/cross-appellees' plea to the jurisdiction and **RENDER** judgment dismissing appellee/cross-appellant Arnieka Simmons's claims against appellants/cross-appellees for lack of subject matter jurisdiction.

It is **ORDERED** that appellants/cross-appellees Ken Paxton, in his official capacity as Attorney General of the State of Texas, and the State of Texas recover their costs of this appeal from appellee/cross-appellant Arnieka Simmons.

Judgment entered this 21st day of January, 2022.