**Opinion issued January 30, 2024**



In The

# Court of Appeals

For The

# First District of Texas

_____

## NO. 01-21-00255-CV

_____

**CITY OF HOUSTON, Appellant**

**V.**

**JOHN ANTHONY BRANCH, Appellee**

---

**On Appeal from the 333rd District Court**
**Harris County, Texas**
**Trial Court Case No. 2020-31674**

---

## OPINION ON EN BANC RECONSIDERATION

Appellee John Anthony Branch has filed a motion for en banc reconsideration of our September 1, 2022 opinion and judgment. *See* TEX. R. APP. P. 49.5. A majority of the Court has voted to grant en banc reconsideration. We withdraw our opinion

of September 1, 2022, vacate our judgment of the same date, and issue this opinion and judgment in their stead.

Branch sued the City of Houston for negligence, alleging that he was injured when a Houston city councilmember hit the gas pedal of a golf cart with his foot, causing the golf cart to strike Branch. The City moved for summary judgment, arguing that Branch could not establish that the Texas Tort Claims Act ("Tort Claims Act" or "the Act") waived its governmental immunity. The trial court denied the City's summary judgment motion.

The City appeals, arguing that the Tort Claims Act does not waive immunity because Branch's injury did not arise from the "operation or use of a motor-driven vehicle." *See* TEX. CIV. PRAC. & REM. CODE § 101.021(1). Rather, the City argues that the golf cart was being used as a "waiting area or holding cell" when Branch was injured. The City also argues that the Tort Claims Act only waives governmental immunity when the motor vehicle in question is a government-owned vehicle, and the golf cart here was privately owned. The City further argues that Branch filed an untimely amendment to his petition to assert the Tort Claims Act's personal property waiver, which also does not apply to waive the City's immunity in this case.

We hold that Branch has raised a fact issue precluding summary judgment for the City. Giving the statutory terms their everyday meaning, we hold that hitting the gas pedal—even inadvertently—constitutes the "operation or use of a motor-driven

2

vehicle." Branch has presented some evidence that his injuries arose from the city councilmember's accidental engagement of the golf cart's gas pedal, causing the golf cart to roll forward and injure Branch. We further hold that nothing in the Tort Claims Act restricts the motor-vehicle waiver of governmental immunity to government-owned vehicles. Accordingly, we affirm the judgment of the trial court.

## Background

On October 13, 2018, the Booker T. Washington High School Alumni Association held a parade in Houston to celebrate the school's 125th anniversary. John Gibbs was the president-elect of the Alumni Association and served as a co-Chair of the parade. At that time, Gibbs was also the community outreach liaison for City of Houston Councilmember Michael Kubosh.

Although the parade was not sponsored by the City of Houston, several city leaders and elected officials attended the parade, including Councilmember Kubosh. Gibbs's role was to drive Councilmember Kubosh along the parade route in Kubosh's privately owned golf cart. According to Gibbs, before the parade started, he drove Councilmember Kubosh in the golf cart to the correct position in the parade lineup. Gibbs stopped the golf cart and "applied the golf cart's brake and emergency brake." Branch, another participant in the parade, walked over to the golf cart and "leaned with his elbows on the windshield of the golf cart." Branch's feet "were underneath the front of the golf cart."

Gibbs then got out of the golf cart from the driver's side of the cart. According to Gibbs, the golf cart's emergency brake was still on. Councilmember Kubosh, who had been sitting in the passenger seat of the golf cart, "started to slide towards the driver's side of the vehicle." In his peripheral vision, Gibbs saw Councilmember Kubosh's left foot "pass over the gas pedal without touching it." However, when Councilmember Kubosh shifted his body weight within the golf cart, "the golf cart shifted forward." Gibbs did not see the golf cart strike Branch, but he heard other people ask Branch if he was okay. Branch responded that he was.

Branch filed a personal injury lawsuit against the City. He alleged that "City employee Michael Kubosh operated a golf cart which ran over" him, causing him injury. Specifically, he alleged that Councilmember Kubosh failed to maintain a proper lookout; failed to control the operation of the golf cart; failed to avoid the incident in question; failed to pay attention to his surroundings; and failed to operate the golf cart as a person of ordinary prudence would have in the same or similar circumstance.

Branch further alleged that, at the time of the incident, Councilmember Kubosh was a City of Houston employee and was acting in the course and scope of his employment with the City. Branch also alleged that the Tort Claims Act waived the City's governmental immunity "from claims involving personal injury caused by the negligent operation or use of a motor-driven vehicle by [the City's] employee,

4

if the employee would be liable to [Branch] according to Texas law." *See* TEX. CIV. PRAC. & REM. CODE § 101.021(1).

The City filed a traditional motion for summary judgment and argued that Branch's suit should be dismissed because the Tort Claims Act's motor-vehicle waiver did not apply to waive the City's governmental immunity. The City argued that the motor-vehicle waiver applied only to "publicly owned automobiles," and the City's summary judgment evidence established that Councilmember Kubosh personally owned the golf cart.

The City also argued that the Tort Claims Act did not waive governmental immunity because Councilmember Kubosh was not operating the golf cart at the time of the accident. According to the City, at the time the golf cart "lurch[ed] forward," the golf cart was being used "as nothing more than a waiting area for Councilmember Kubosh while he waited for the parade to start." The City argued that Councilmember Kubosh did not touch the gas pedal, but the "weight shift within the golf cart" caused it to move forward "without anyone operating it." As summary judgment evidence, the City attached a picture of the golf cart and an affidavit from Gibbs.

Branch responded and argued that the City did not retain its immunity solely because the golf cart was privately owned by Councilmember Kubosh instead of owned by the City. Branch also argued that, beyond merely shifting his weight in

5

the golf cart, Councilmember Kubosh touched the gas pedal with his foot. Branch supported this assertion with his own affidavit. He averred:

> At the parade City of Houston Councilmember Kubosh was sitting in the passenger seat of a stopped golfcart. Councilmember Kubosh leaned over to the driver's side of the golf cart to speak to someone. When Councilmember Kubosh did this, he reached out his hand and leaned his body to the driver's side of the golf cart. Then Councilmember Kubosh's foot hit the gas pedal and I heard the golfcart's engine rev. I then felt the golf cart hit me.

Branch also averred that Gibbs "was about 10 feet away, talking to someone else, when the golfcart hit" Branch. Branch argued that this evidence created a fact issue on whether Councilmember Kubosh was operating and using the golf cart at the time of the accident.

Among other arguments made in its reply, the City argued that one of the cases that Branch had relied upon to support his contention that privately owned vehicles fall within the motor-vehicle waiver was inapposite because the case did not address the motor-vehicle waiver but instead involved the Tort Claims Act's tangible personal property waiver. Branch, however, had only pleaded the motor-vehicle waiver as the applicable waiver of immunity.

The day before the hearing on the City's summary judgment motion, Branch filed an amended petition. Branch asserted the tangible personal property waiver as an additional basis for waiving the City's governmental immunity. *See* TEX. CIV. PRAC. & REM. CODE § 101.021(2) (waiving immunity for personal injury and death

6

caused by "a condition or use of tangible personal or real property"). Branch continued to assert the motor-vehicle waiver. He also amended the factual allegations in this petition to state, "City employee Michael Kubosh was in the passenger seat of a golf cart when he ran over Plaintiff."

On May 4, 2021, the day of the summary judgment hearing, the trial court denied the City's motion for summary judgment. The order recited that the court considered the motion, "the pleadings, the response, the reply (if any), the affidavits, and other evidence on file." Later that same day, Branch filed a motion for leave to amend his petition. The trial court did not sign an order specifically granting or denying Branch's motion for leave to amend.

The City filed this interlocutory appeal of the trial court's order denying the summary judgment motion. *See id.* § 51.014(a)(8) (allowing interlocutory appeal from order that grants or denies plea to jurisdiction by governmental unit); *Town of Shady Shores v. Swanson*, 590 S.W.3d 544, 549 (Tex. 2019) (stating that section 51.014(a)(8) "allows an interlocutory appeal to be taken when 'the trial court denies the governmental entity's claim of no jurisdiction, whether it has been asserted by a plea to the jurisdiction, a motion for summary judgment, or otherwise'") (quoting *Harris Cnty. v. Sykes*, 136 S.W.3d 635, 638 (Tex. 2004)).

**Texas Tort Claims Act Analysis**

In its first issue, the City contends that the trial court erroneously denied its summary judgment motion because the Tort Claims Act's motor-vehicle waiver of immunity did not apply under the facts of this case. Specifically, the City argues that Branch could not rely on this waiver because (1) Councilmember Kubosh was not operating or using the golf cart at the time of the accident because he was only using the cart as a waiting area; and (2) the Act only waives immunity when a government-owned vehicle causes the injury, and the golf cart in this case was privately owned. We consider each argument in turn.

*A.* *Standard of Review*

Sovereign immunity protects the State of Texas against lawsuits for damages unless the State consents to be sued. *Gulf Coast Ctr. v. Curry*, 658 S.W.3d 281, 283 (Tex. 2022). Governmental immunity provides similar protection to political subdivisions of the State, including counties, cities, and school districts. *Travis Cent. Appraisal Dist. v. Norman*, 342 S.W.3d 54, 57–58 (Tex. 2011); *Sykes*, 136 S.W.3d at 638.

"[G]overnmental immunity has two components: immunity from liability, which bars enforcement of a judgment against a governmental entity, and immunity from suit, which bars suit against the entity altogether." *Tooke v. City of Mexia*, 197 S.W.3d 325, 332 (Tex. 2006). Immunity from suit bars an action against the State

and its subdivisions unless the Legislature has expressly consented to the suit. *Sweeny Cmty. Hosp. v. Mendez*, 226 S.W.3d 584, 589 (Tex. App.—Houston [1st Dist.] 2007, no pet.). "Immunity from suit thus presents a jurisdictional question of whether the State has expressly consented to suit." *Curry*, 658 S.W.3d at 284. Parties may raise immunity from suit through several different procedural vehicles, including a plea to the jurisdiction or a motion for summary judgment. *Alamo Heights Indep. Sch. Dist. v. Clark*, 544 S.W.3d 755, 770 (Tex. 2018).

A party challenging subject-matter jurisdiction may challenge the pleadings, the existence of jurisdictional facts, or both. *Id.* When the challenge is to the pleadings, we must determine whether the plaintiff has alleged facts affirmatively demonstrating that the trial court has subject-matter jurisdiction. *Id.* If the party challenges the existence of jurisdictional facts, we move beyond the pleadings "and consider evidence when necessary to resolve the jurisdictional issues, even if the evidence implicates both subject-matter jurisdiction and the merits of a claim." *Id.* at 770–71; *Mission Consol. Indep. Sch. Dist. v. Garcia*, 372 S.W.3d 629, 635 (Tex. 2012).

We review de novo the question whether the trial court had subject-matter jurisdiction. *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226, 228 (Tex. 2004). In some cases, "disputed evidence of jurisdictional facts that also implicate the merits of the case may require resolution by the finder of fact." *Id.* at

226. When the jurisdictional challenge implicates the merits of the plaintiff's claim and the challenge includes evidence, the trial court reviews the relevant evidence to determine if a fact issue exists. *Id.* at 227; *see Swanson*, 590 S.W.3d at 552 (stating that when jurisdictional challenge implicates merits of case, "plaintiff will be required to present sufficient evidence on the merits of her claims to create a genuine issue of material fact"). If the evidence raises a fact question regarding the jurisdictional issue, then the trial court cannot grant the jurisdictional challenge and the fact issue must be resolved by the factfinder. *Miranda*, 133 S.W.3d at 227–28; *see Garcia*, 372 S.W.3d at 635 ("If a fact issue exists, the trial court should deny the plea.").

When evidence has been submitted that implicates the merits of the case, "we take as true all evidence favorable to the nonmovant." *Miranda*, 133 S.W.3d at 228; *see Swanson*, 590 S.W.3d at 552. We indulge every reasonable inference and resolve any doubts in the nonmovant's favor. *Clark*, 544 S.W.3d at 771; *Miranda*, 133 S.W.3d at 228. We cannot, however, "disregard evidence necessary to show context, and we cannot disregard evidence and inferences unfavorable to the plaintiff if reasonable jurors could not." *Clark*, 544 S.W.3d at 771.

Statutory interpretation presents a question of law that we review de novo. *Cadena Comercial USA Corp. v. Tex. Alcoholic Beverage Comm'n*, 518 S.W.3d 318, 325 (Tex. 2017). The goal of statutory interpretation is ascertaining and

effectuating the Legislature's intent. *Id.* We give a statute's words their plain meaning unless a different meaning "is supplied, is apparent from the context, or the plain meaning of the words leads to absurd or nonsensical results." *Id.* We read words and phrases in context, presuming that the Legislature chose the statute's words with care and for a purpose, while "purposefully omitting words not chosen." *Id.* at 325–26 (quoting *TGS-NOPEC Geophysical Co. v. Combs*, 340 S.W.3d 432, 439 (Tex. 2011)). "[W]e take statutes as we find them and refrain from rewriting the Legislature's text." *Id.* at 326.

## B.    *Whether Branch's Injury Arose From a City Employee's Operation or Use of a Motor Vehicle*

The Texas Tort Claims Act waives the City's governmental immunity for certain kinds of tort claims. *Curry*, 658 S.W.3d at 284; *City of Dallas v. Sanchez*, 494 S.W.3d 722, 726 (Tex. 2016) (per curiam). Relevant here, Civil Practice and Remedies Code section 101.021(1) provides that a governmental unit is liable for:

> (1)    property damage, personal injury, and death proximately caused by the wrongful act or omission or the negligence of an employee acting within his scope of employment if:
>
> > (A)    the property damage, personal injury, or death arises from the operation or use of a motor-driven vehicle or motor-driven equipment; and
> >
> > (B)    the employee would be personally liable to the claimant according to Texas law[.]

TEX. CIV. PRAC. & REM. CODE § 101.021(1).

The question here is whether the evidence, taken in Branch's favor, creates a fact issue on whether his injury arose from Councilmember Kubosh's "operation or use of a motor-driven vehicle." *See id.* We do not draw upon a blank slate in answering this question. The Texas Supreme Court has held that everyday terms like "use" and "operation" should be given their ordinary, "everyday meaning." *PHI, Inc. v. Tex. Juv. Just. Dep't*, 593 S.W.3d 296, 303 (Tex. 2019). In common parlance, "use" means "to put or bring into action or service; to employ for or apply to a given purpose." *Id.* (quoting *Mount Pleasant Indep. Sch. Dist. v. Est. of Lindburg*, 766 S.W.2d 208, 211 (Tex. 1989)); *Tex. Nat. Res. Conservation Comm'n v. White*, 46 S.W.3d 864, 869 (Tex. 2001). "Operation" means "a doing or performing of a practical work." *PHI*, 593 S.W.3d at 303 (quoting *Mount Pleasant Indep. Sch. Dist.*, 766 S.W.2d at 211).

Not every injury involving a motor vehicle will trigger the Act's immunity waiver, however. The Texas Supreme Court has held that immunity remains intact when the vehicle is merely the "setting" for the plaintiff's injury, such as when a plaintiff happens to get hurt in a vehicle that is being used as a "waiting area or holding cell." *Ryder Integrated Logistics, Inc. v. Fayette Cnty.*, 453 S.W.3d 922, 927–28 (Tex. 2015) (per curiam); *see also City of Kemah v. Vela*, 149 S.W.3d 199, 204 (Tex. App.—Houston [14th Dist.] 2004, pet. denied) (finding no "use" of vehicle under Tort Claims Act where plaintiff was injured in car accident while

12

sitting in parked police cruiser). Instead, to trigger the immunity waiver, the government employee's "use or operation [of the vehicle] 'must have actually caused the injury.'" *PHI*, 593 S.W.3d at 302 (quoting *White*, 46 S.W.3d at 869).

Keeping this distinction in mind, we turn to the evidence that was before the trial court. Branch averred that Councilmember Kubosh was sitting in the golf cart's passenger seat when he leaned over to speak to someone. At that point, according to Branch, Councilmember Kubosh's "foot hit the gas pedal," and Branch heard the golf cart's engine engage. Branch then felt the golf cart hit him. The City acknowledges that Branch was leaning over the front of the golf cart at the point that the golf cart struck him. Branch argues that this evidence raised a fact issue on the question whether his injury arose out of Councilmember Kubosh's "operation or use" of the golf cart. The City argues that on these facts, the City is entitled to summary judgment because Councilmember Kubosh was not using the golf cart "as a vehicle." According to the City, Councilmember Kubosh was using the golf cart as a "waiting area" or "holding cell."

We hold that this evidence raised a fact issue that precluded the trial court from granting the City's summary judgment motion. The Texas Supreme Court's opinion in *PHI* is instructive on this point. In *PHI*, the court held that a government employee's failure to set an emergency brake on an unoccupied passenger van, which subsequently rolled downhill and crashed into plaintiff PHI's helicopter,

13

qualified as the "operation or use" of a vehicle within the meaning of the Tort Claims Act. *Id.* at 300, 303–04. The court did not recognize any requirement that the government employee intentionally set the vehicle in motion to trigger the statute's immunity waiver.

In so holding, the Texas Supreme Court emphasized that courts must apply the "plain meaning of statutory text 'unless a different meaning is apparent from the context or the plain meaning leads to absurd or nonsensical results.'" *Id.* at 303 (quoting *Molinet v. Kimbrell*, 356 S.W.3d 407, 411 (Tex. 2011)). The words "use" and "operation"—the court noted—are "nothing if not common, everyday words." *Id.* When the Texas Legislature opts for such "ordinary" language, "[o]rdinary citizens should be able to rely on the plain language of a statute to mean what it says." *Id.* (quoting *Fitzgerald v. Advanced Spine Fixation Sys., Inc*., 996 S.W.2d 864, 866 (Tex. 1999)). Applying a "simple construction" of the ordinary statutory language to the facts of the case, the court concluded that the driver's failure to engage the emergency brake constituted the "operation or use" of a motor vehicle even though the driver was not in the vehicle when it struck the helicopter. *Id.* at 303–04. The court noted that "[i]n terms of the everyday experience of driving, we think it self-evident that ensuring your car will not roll away after you leave it, including engagement of the emergency brake when necessary, is an integral part of the 'operation or use' of a vehicle." *Id.*

14

The *PHI* court further emphasized that nothing in its opinion was inconsistent with its prior statement in *Ryder* that "a government employee must have been actively operating the vehicle at the time of the incident" to trigger the immunity waiver.[1] *See id.* at 304–06; *Ryder Integrated Logistics*, 453 S.W.3d at 927. The court reasoned that securing a vehicle so that it will not roll away is the "final *act* of driving," so it was "no stretch" to consider the failure to set the emergency brake as part of the "active operation or use" of the vehicle. *PHI*, 593 S.W.3d at 305. Section 101.021(1) "requires that the accident arise from the use or operation of the vehicle," and the statutory language "covers the allegations in question [in *PHI*] because 'operation' of a vehicle includes making sure it does not roll away after it is parked." *Id.* at 306.

Here, the case for waiver of immunity is at least as strong as it was in *PHI*. Applying an ordinary construction of the plain statutory language, stepping on the gas pedal of a motor vehicle is an "integral part of the 'operation or use' of a vehicle." *See id.* at 303–04. Whereas applying the emergency brake is the "final" act of driving, applying the gas pedal initiates the act of driving. Indeed, the gas pedal is

---

[1] The *PHI* court clarified that while "*Ryder* correctly suggests that whether a government vehicle was in 'active' operation 'at the time of the incident' is an important consideration in determining whether an alleged injury arises from the operation or use of a vehicle," "active" operation is not a requirement in the statutory text. *PHI, Inc. v. Tex. Juv. Just. Dep't*, 593 S.W.3d 296, 305 (Tex. 2019). As such, that "single sentence from [*Ryder*] is not itself the rule of decision." *Id.*

15

designed for the purpose of enabling the car to move. Consequently, stepping on the gas pedal—even when done unintentionally—squarely fits within the definition of "use" as meaning "to put or bring" the motor vehicle "into action or service." *See Mount Pleasant Indep. Sch. Dist.*, 766 S.W.2d at 211.

The City makes four arguments for why it was entitled to summary judgment. First, the City argues that it was entitled to summary judgment under the Texas Supreme Court's earlier decision in *LeLeaux v. Hamshire-Fannett Independent School District* because Councilmember Kubosh was using the golf cart as a mere "waiting area" and not "as a vehicle." In *LeLeaux*, a high school student sued the school district and a bus driver for injuries that she sustained when she hit her head on the doorframe of a school bus following a band competition. *See* 835 S.W.2d 49, 50–51 (Tex. 1992).

The Texas Supreme Court concluded that section 101.021(1) did not waive the school district's governmental immunity because the bus was not in operation or use at the time of the student's injury. *Id.* at 51–52. The court explained:

> The bus in this case was not in operation; it was parked, empty, with the motor off. The driver was not aboard; there were no students aboard. The bus was not "doing or performing a practical work"; it was not being "put or [brought] into action or service"; it was not being "employ[ed] or appl[ied] to a given purpose." The bus was nothing more than the place where [the student] happened to injure herself.

*Id.* at 51. In other words, the Tort Claims Act did not waive immunity because the vehicle itself was "only the setting" for the plaintiff's injury. *Id.* at 52; *see Ryder*

*Integrated Logistics*, 453 S.W.3d at 927 (citing *LeLeaux* for proposition that, for immunity waiver in section 101.021(1) to apply, "the vehicle must have been used as a vehicle, and not, e.g., as a waiting area or holding cell").

We disagree with the City's argument that this case is analogous to *LeLeaux*. Even if the golf cart initially was being used as a holding cell or waiting area for the parade, the golf cart came into use or operation at the point that Councilmember Kubosh's foot struck the gas pedal. By pressing the gas pedal, Councilmember Kubosh used the vehicle as a vehicle, even if he did not intend to do so. We therefore distinguish *LeLeaux* for the same reason that the Texas Supreme Court distinguished *LeLeaux* in *PHI*: "The bus *driver* in *LeLeaux* had nothing to do with the accident." *See PHI*, 593 S.W.3d at 304. Here, in contrast to *LeLeaux*, Branch's allegation is that Councilmember Kubosh injured him by "performing" an act that is "integral" to driving. *See id.*

Next, the City argues that "the unrefuted evidence established that the actual cause of the incident was not a government employee's negligent operation of a motor vehicle, but Branch's decision to stand directly in front of the golf cart with his elbows on the windshield and his feet under the wheels." Adopting this argument would require us to disregard Branch's testimony that Councilmember Kubosh hit the gas pedal and caused the golf cart to roll forward and strike Branch. In deciding whether a genuine issue of material fact precludes summary judgment, we must

consider all the evidence in the light most favorable to Branch, the nonmovant. *See Clark*, 544 S.W.3d at 771; *Miranda*, 133 S.W.3d at 228. Although Gibbs provided competing testimony that Councilmember Kubosh's foot did not strike the gas pedal, we are required to view the evidence in the light most favorable to Branch at this juncture. *See Miranda*, 133 S.W.3d at 228 (stating that, in determining whether fact issue on jurisdictional issue has been raised, we take as true all evidence favorable to nonmovant).

Third, the City argues that "even if Kubosh's foot hit the gas pedal," the statute's immunity waiver is not triggered because Councilmember Kubosh was not employing the golf cart "for the purpose of transportation; rather, Councilmember Kubosh was employing the golf cart for the purpose of having a place to sit" and converse "while waiting for the parade to start."

This argument invites us to hold that the Tort Claims Act's immunity waiver turns on the government employee's subjective purpose or intention. In other words, triggering immunity would require the plaintiff to prove not merely that the government employee operated or used the vehicle, but also that the government employee *intended* to operate or use the vehicle.

We decline to read an intent requirement into the statute. We interpret the Tort Claims Act by reading its words and phrases in context, presuming that the Legislature chose the statute's words with care and for a purpose, while

18

"purposefully omitting words not chosen." *TGS-NOPEC Geophysical*, 340 S.W.3d at 439. The Tort Claims Act waives the City's governmental immunity if the plaintiff's injury "arises from the operation or use of a motor-driven vehicle or motor-driven equipment." TEX. CIV. PRAC. & REM. CODE § 101.021(1). The statute contains no intent requirement. We presume that this omission was intentional, and we decline to rewrite the statute to require proof of intentional operation or use. *See Cadena Comercial USA*, 518 S.W.3d at 325–26.

Because section 101.021(1) contains no intent requirement, immunity does not turn on whether Councilmember Kubosh intended to strike the gas pedal or merely intended to reposition himself to speak to someone on the driver's side of the cart. By striking the gas pedal, he actively operated the golf cart. *See Ryder Integrated Logistics*, 453 S.W.3d at 927. At the moment that his foot contacted the gas pedal, the golf cart no longer functioned as a mere waiting area. Consequently, unlike in *LeLeaux*, the vehicle was not "merely the place where the injury occurred." *See PHI*, 593 S.W.3d at 304. Rather, taking the evidence in favor of Branch as we must, there is some proof that the golf cart's "operation and use are directly, causally linked to the accident and the damages sustained." *See id.*

Finally, the City argues that Councilmember Kubosh's operation or use of the vehicle was too "geographically, temporally, or causally attenuated" from Branch's injury to trigger the Tort Claims Act's immunity waiver. For support, the City

invokes a number of cases in which the government employee's use or operation of the vehicle "did no more than furnish the condition that made" the injury "possible." *See, e.g.*, *City of Dallas v. Hillis*, 308 S.W.3d 526 (Tex. App.—Dallas 2010, pet. denied); *City of Sugarland v. Ballard*, 174 S.W.3d 259 (Tex. App.—Houston [1st Dist.] 2005, no pet.); *City of Pharr v. Herrera*, No. 13-15-00133-CV, 2017 WL 929483 (Tex. App.—Corpus Christi–Edinburg Mar. 9, 2017, no pet.) (mem. op.).

We disagree. The geographic proximity was, simply put, as close as it gets. The City acknowledges that Branch was standing "directly in front of the golf cart with his elbows on the windshield and his feet under the wheels" when he was injured. The temporal proximity was immediate. Branch testified that he heard the engine rev, and then he felt the golf cart hit him. The alleged causal connection was direct, not attenuated. Branch presented evidence that he was leaning on the front of the golf cart, Councilmember Kubosh's foot hit the gas, the engine engaged, and then the golf cart struck Branch.

The close temporal, geographic, and causal connection places this case on the opposite end of the spectrum from those cases in which the courts have found no waiver of governmental immunity. In *Hillis*, the Dallas Court of Appeals held that immunity was not waived for wrongful death and survival claims when, while evading a police car in pursuit, the decedent lost control of his motorcycle on a freeway ramp and fell off of an overpass. *See* 308 S.W.3d at 529, 532–35. In that

20

case, the actual cause of the accident was Hillis's own decision to drive recklessly on a freeway ramp, and the use of the police car merely furnished the condition that made the accident possible. *Id.* at 534.

In *Ballard*, a panel of this Court held that the City of Sugar Land's governmental immunity was not waived for a wrongful death claim. *See* 174 S.W.3d at 265–67. In that case, a city police officer was transporting a juvenile suspect in a police vehicle on a freeway when the suspect opened a rear door of the patrol car. *Id.* at 263. The juvenile suspect then jumped out of the vehicle and was fatally struck by an oncoming car. *Id.* This Court concluded that the actual cause of the decedent's death was the decedent's "deliberate decision to flee into freeway traffic and a separate car's hitting him there." *Id.* at 266. The police officer's alleged failure to secure the decedent in the patrol car "merely furnished the condition that made it possible for [the decedent] to escape and then run into oncoming traffic." *Id.*

Similarly, in *Herrera*, the Corpus Christi—Edinburg Court of Appeals found no waiver of immunity when, sometime after a city police-car pursuit was commenced and disengaged, the pursued suspect fatally collided with the decedent's vehicle. *See* 2017 WL 929483, at *1. The court concluded that the there was no causal nexus between the police officer's use of a vehicle and the plaintiff's injury, and that the act of initiating the chase was too attenuated from the suspect's conduct to constitute a cause of the alleged injuries. *Id.* at *2–3.

21

Here, because a fact question exists on the jurisdictional issue—application of the motor-vehicle waiver found in section 101.021(1)—the trial court could not grant summary judgment in favor of the City based on no "operation or use" of a motor vehicle. *See Miranda*, 133 S.W.3d at 227–28; *Garcia*, 372 S.W.3d at 635. We therefore turn to the question whether the City was entitled to summary judgment on the ground that the golf cart was privately owned.

## C. *Whether the Motor-Vehicle Waiver in Section 101.021(1) Applies Only to Publicly Owned Vehicles.*

The City contends that it was entitled to summary judgment because the private ownership of the golf cart precluded Branch from raising a fact issue on whether the Tort Claims Act's motor-vehicle waiver applied. The City argues that it is a "truth universally acknowledged" that the Tort Claims Act "only waives governmental immunity for publicly owned vehicles." Branch responds that the City's argument contravenes the plain text of the statute and multiple opinions from Texas intermediate courts.

"[W]e take statutes as we find them and refrain from rewriting the Legislature's text." *Cadena Comercial USA*, 518 S.W.3d at 326. When construing or applying the Tort Claims Act, "[t]he statute itself—and only the statute—provides the governing rule of decision." *PHI*, 593 S.W.3d at 305. "[N]o court has the authority, under the guise of interpreting a statute, to engraft extra-statutory requirements not found in a statute's text." *Id.* We read words and phrases in context,

22

presuming that the Legislature chose the statute's words with care and for a purpose, while "purposefully omitting words not chosen." *TGS-NOPEC Geophysical*, 340 S.W.3d at 439.

The City contends that section 101.021(1) requires that the motor-driven vehicle must be owned by a governmental unit for the immunity waiver contained in that section to apply. Turning to the statutory text, section 101.021(1) waives governmental immunity for "property damage, personal injury, and death proximately caused by the wrongful act or omission or the negligence of an employee acting within his scope of employment if . . . the property damage, personal injury, or death arises from the operation or use of *a motor-driven vehicle* or motor-driven equipment . . . ." TEX. CIV. PRAC. & REM. CODE § 101.021(1)(A) (emphasis added). If the Legislature had wanted to limit the immunity waiver to injuries arising from the operation or use of a government-owned motor-driven vehicle, then the Legislature could have added this limitation into the text. We presume that the Legislature's omission of any government-ownership requirement was intentional. *See TGS-NOPEC Geophysical*, 340 S.W.3d at 439.

We are not alone in reaching this conclusion. Construing the same statute, the Fourteenth Court of Appeals held that "[t]here is no requirement that the vehicle in question be a county vehicle, only that a county employee 'used' or 'operated' the vehicle." *Cnty. of Galveston v. Morgan*, 882 S.W.2d 485, 490 (Tex. App.—Houston

23

[14th Dist.] 1994, writ denied). Other intermediate courts have reasoned similarly. *See Sem v. State*, 821 S.W.2d 411, 415–16 (Tex. App.—Fort Worth 1991, no writ) (construing both motor-vehicle waiver and personal-property waiver of immunity in section 101.021 and stating that "[n]othing in this section requires that the State own the tangible property in question, and we have found no case holding that the State must own the property in order to be subjected to liability under the [Tort Claims Act]"); *City of Socorro v. Hernandez*, 508 S.W.3d 1, 8–11 (Tex. App.—El Paso 2015, pet. denied) (concluding plaintiffs' allegations that police officer ordered drivers—who had been involved in two-car automobile accident—to push privately-owned and disabled vehicle out of roadway sufficiently alleged that officer negligently used or operated motor vehicle for purposes of waiving immunity); *Vidor Indep. Sch. Dist. v. Bentsen*, No. 09-04-401-CV, 2005 WL 1653873, at *1, 2 (Tex. App.—Beaumont July 14, 2005, no pet.) (mem. op.) (finding immunity waived under Tort Claims Act where plaintiff's claims arose from government employee's operation or use of motor-driven vehicle that was not owned by school district); *City of El Campo v. Rubio*, 980 S.W.2d 943, 945–47 (Tex. App.—Corpus Christi–Edinburg 1998, pet. dism'd w.o.j.) (holding immunity was waived under motor-vehicle waiver because officer "used" or "operated" vehicle by exercising control over it, even though City did not own vehicle in question).

The City cites no controlling authority to the contrary. Rather, the City points to dicta from *Lowe v. Texas Tech University*, 540 S.W.2d 297, 298 (Tex. 1976), stating that "The [Texas Tort Claims Act] provide[s] for waiver of governmental immunity in three general areas: use of publicly owned automobiles, premises defects, and injuries arising out of conditions or use of property." *Lowe* was a case involving a football injury to a Texas Tech player, and it did not involve the motor-vehicle immunity waiver. *Id.*

Nevertheless, *Lowe*'s dicta concerning "publicly owned automobiles" has been cited repeatedly by the Texas Supreme Court, this Court, and our sister intermediate appellate courts, but none of these cases held that a privately owned vehicle could not trigger the waiver. *See, e.g.*, *Sampson v. Univ. of Tex. at Austin*, 500 S.W.3d 380, 384 (Tex. 2016) (premises defect waiver case); *Cnty. of Cameron v. Brown*, 80 S.W.3d 549, 554 (Tex. 2002) (same); *Tex. Dep't of Transp. v. Tarver*, No. 01-17-00919-CV, 2018 WL 3468475, at *2 (Tex. App.—Houston [1st Dist.] July 19, 2018, no pet.) (mem. op.) (concerning lack of proper pre-suit notice); *Tex. Dep't of Transp. v. Ives*, No. 05-18-01527-CV, 2020 WL 2715367, at *1 (Tex. App.—Dallas May 26, 2020, pet. denied) (mem. op. on reh'g) (premises defect waiver case); *Univ. of Tex. Health Sci. Ctr. at Houston v. Garcia*, 346 S.W.3d 220, 224 (Tex. App.—Houston [14th Dist.] 2011, no pet.) (same).

It appears that this dicta was simply an underinclusive, shorthand way of summarizing the general categories of claims available under the Tort Claims Act. At the time the Texas Supreme Court issued *Lowe*, Article 6252–19—the statutory predecessor to Civil Practice and Remedies Code Chapter 101—stated:

> Each unit of government in the state shall be liable for money damages for property damage or personal injuries or death when proximately caused by the negligence or wrongful act or omission of any officer or employee acting within the scope of his employment or office arising from the operation or use of a motor-driven vehicle and motor-driven equipment . . . .

Act of April 11, 1973, 63d Leg., R.S., ch. 50, § 1, sec. 3, 1973 Tex. Gen. Laws 77, 77 (repealed 1985); *see Lowe*, 540 S.W.2d at 298–99. The predecessor statute to section 101.021(1) did not require the motor-driven vehicle to be publicly owned. Section 101.021(1)'s language is similar to its statutory predecessor. It provides that a governmental unit is liable for personal injury proximately caused by the wrongful act or omission or the negligence of an employee acting within his scope of employment if the injury "arises from the operation or use of a motor-driven vehicle or motor-driven equipment." TEX. CIV. PRAC. & REM. CODE § 101.021(1)(A). This statutory language includes no requirement that the motor-driven vehicle at issue be publicly owned. *See PHI*, 593 S.W.3d at 305 ("The statute itself—and only the statute—provides the governing rule of decision."); *Cadena Comercial USA*, 518 S.W.3d at 326 ("[W]e take statutes as we find them and refrain from rewriting the Legislature's text.").

We conclude that section 101.021(1) does not require a plaintiff to establish that the vehicle at issue was publicly owned by a governmental unit in order to rely on the motor-vehicle immunity waiver. Consequently, Branch's failure to provide summary judgment evidence controverting Councilmember Kubosh's private ownership of the golf cart is not fatal to Branch's attempt to avoid summary judgment. We hold that the trial court did not err to the extent that it denied the City's summary judgment motion based on the motor-vehicle waiver.

We overrule the City's first issue.[2]

---

[2] Because we conclude that Branch raised a fact issue on the applicability of the motor-vehicle waiver, and therefore the trial court did not err to the extent it denied summary judgment on this basis, we need not address the City's second issue— whether Branch could rely upon his amendment to his petition raising the Tort Claims Act's personal property waiver, filed the day before the summary judgment hearing. *See* TEX. R. APP. P. 47.1 ("The court of appeals must hand down a written opinion that is as brief as practicable but that addresses every issue raised and necessary to final disposition of the appeal.").

**Conclusion**

We affirm the order of the trial court.

April L. Farris
Justice

En Banc Court consists of Chief Justice Adams and Justices Kelly, Goodman, Hightower, Countiss, Rivas-Molloy, Guerra, and Farris.

Justice Rivas-Molloy, joined by Justice Goodman, dissenting.

Justice Landau, not participating.