**CITY OF DALLAS, Appellant,**

v.

**Phil HILLIS, Individually and as Personal Representative of the Estate of Taylor Hillis, Deceased, and Buffy Hillis, Appellees.**

No. 05–08–01644–CV.

Court of Appeals of Texas, Dallas.

March 30, 2010.

Rehearing Overruled April 29, 2010.

---

Patricia M. Medrano, City of Dallas Attorney's Office, Dallas, for appellant.

Jeffrey Simon, Sean R. Cox, Simon, Eddins & Greenstone, L.L.P., Randy Isenberg, Dallas, for appellees.

Before Justices MOSELEY, FITZGERALD, and LANG–MIERS.

## OPINION

Opinion By Justice FITZGERALD.

Appellees sued the City of Dallas on claims arising from the death of Taylor Hillis. The City filed a plea to the jurisdiction based on governmental immunity. The trial court signed an order granting the plea in part and denying it in part. The City timely perfected this interlocutory appeal from that order. Appellees cross-appealed the order to the extent the trial court granted the plea. We conclude that all of appellees' claims are barred by governmental immunity, so we affirm in part and reverse in part.

### I. BACKGROUND

Phil and Buffy Hillis sued the City of Dallas. Their live pleading at the time of the order now on appeal was their first amended petition. In the first amended petition, they allege the following facts. On October 6, 2006, Dallas police officer Fernando Perez attempted to initiate a routine traffic stop of Taylor Hillis, who

was operating a motorcycle. When Hillis did not stop, Perez pursued in his police car at speeds exceeding 110 miles per hour. Perez followed Hillis onto South Central Expressway. At the "High Five" overpass, Hillis entered the eastbound ramp to Interstate 635. Hillis lost control of his motorcycle on the ramp, causing him and his passenger to fall off the overpass and to sustain fatal injuries.

The Hillises assert wrongful-death and survival claims against the City for the death of Taylor Hillis. They invoke several legal theories of liability. First, they allege that Perez's negligently caused Hillis's death by his conduct. In connection with this claim, they allege that Perez violated the Dallas Police Department's own "no-chase policy" governing high-speed chases. Second, they allege that the City negligently hired, retained, and assigned Perez. Third, they allege that the City negligently supervised, trained, and directed Perez. Fourth, they allege that the City negligently entrusted the patrol car to Perez. Fifth, they allege that the City negligently failed to discipline Perez for prior instances of negligent or reckless conduct. The Hillises also assert globally that "[a]ll of the allegations in this Petition address the negligent implementation of policy."

The City filed a plea to the jurisdiction attacking all of the claims pleaded in the Hillises' original petition. After the Hillises amended their pleadings, the City filed a supplemental plea to the jurisdiction to address the new allegations in the first amended petition. The trial court held an evidentiary hearing on the City's plea to the jurisdiction. At the hearing, the court admitted into evidence the video recording made by the dashboard camera in Perez's patrol car during the incident in question.

The trial court signed an order granting the City's plea in part and denying it in part. The court granted the plea as to the Hillises' claims for (1) negligent hiring, retention, and assignment; (2) negligent supervision, training, and direction; and (3) negligent failure to discipline. The court denied the plea as to the claims for (1) negligent implementation of policy; (2) negligent entrustment; and (3) wrongful death and survival. The City appealed the court's order, and the Hillises filed a notice of cross-appeal. We have jurisdiction pursuant to section 51.014(a)(8) of the civil practice and remedies code.

## II. MOTION TO DISMISS CROSS-APPEAL

 The City has moved to dismiss the Hillises' cross-appeal because their notice of cross-appeal was untimely. The trial court signed the relevant order on December 3, 2008. The City timely filed its notice of appeal on December 10, 2008. The Hillises filed their notice of cross-appeal on January 5, 2009. Under Texas Rule of Appellate Procedure 26.1(d), the notice of cross-appeal was due on December 24, 2009.[1] The Hillises acknowledge that their notice of cross-appeal was late, but they point out that they filed the notice within the fifteen-day grace period provided by rule 26.3. Under *Verburgt v. Dorner*, 959 S.W.2d 615, 617 (Tex.1997), we imply a motion to extend time to file notice of appeal under these circumstances. The inquiry then becomes whether the Hillises have furnished a reasonable explanation for the untimely filing. TEX.R.APP. P. 10.5(b)(1)(C). Under this standard, any conduct short of deliberate or intentional noncompliance qualifies as a reasonable

---

1. The Hillises do not contend that the clerk's office was closed on December 24 for the Christmas holiday, but their notice of cross-appeal was untimely even if the holiday extended their deadline to Monday, December 29, 2008.

explanation. *Hone v. Hanafin,* 104 S.W.3d 884, 886–87 (Tex.2003) (per curiam). The Hillises' attorney has explained that he misinterpreted the appellate rules and mistakenly believed he had timely cross-appealed by filing the notice of cross-appeal within thirty days of the interlocutory order in question. We accept this as a reasonable explanation and deny the City's motion to dismiss. *See Christus Health Se. Tex. v. Broussard,* 267 S.W.3d 531, 533–34 (Tex.App.-Beaumont 2008, no pet.) ("A party's mistaken belief that no extension was required because the notice of appeal was timely reasonably explains the failure to file a motion for an extension of time.").

### III. ANALYSIS

The City argues in three issues that the trial court erred to the extent it denied the City's plea to the jurisdiction. The Hillises argue in a single issue in their cross-appeal that the trial court erred to the extent it granted the City's plea to the jurisdiction.

### A. Standard and scope of review

 If the plea to the jurisdiction challenges the existence of jurisdictional facts, the trial court must consider relevant evidence submitted by the parties. *Tex. Dep't of Parks & Wildlife v. Miranda,* 133 S.W.3d 217, 227 (Tex.2004). If the evidence creates a fact question regarding the jurisdictional issue, the trial court must deny the plea to the jurisdiction, and the fact issue will be resolved by the fact finder. But if the relevant evidence is undisputed or fails to raise a fact question on the jurisdictional issue, the trial court rules on the plea to the jurisdiction as a matter of law. *Id.* at 227–28. "[T]his standard generally mirrors that of a summary judgment under Texas Rule of Civil Procedure 166a(c). . . . By requiring the

[political subdivision] to meet the summary judgment standard of proof in cases like this one, we protect the plaintiffs from having to 'put on their case simply to establish jurisdiction.'" *Id.* at 228. Our standard of review is de novo. *Id.*

### B. The law of governmental immunity

 A municipality enjoys governmental immunity from suit and from liability for its governmental functions. *Gipson v. City of Dallas,* 247 S.W.3d 465, 469 (Tex. App.-Dallas 2008, pet. denied); *accord City of Dallas v. Heard,* 252 S.W.3d 98, 103 (Tex.App.-Dallas 2008, pet. denied). Police protection is a governmental function. TEX. CIV. PRAC. & REM.CODE ANN. § 101.0215(a)(1) (Vernon 2005). The Texas Tort Claims Act provides a limited waiver of governmental immunity if certain conditions are met. *Harris County v. Sykes,* 136 S.W.3d 635, 638 (Tex.2004). The relevant section of the Act provides:

> A governmental unit in the state is liable for:
>
> (1) property damage, personal injury, and death proximately caused by the wrongful act or omission or the negligence of an employee acting within his scope of employment if:
>
>> (A) the property damage, personal injury, or death arises from the operation or use of a motor-driven vehicle or motor-driven equipment; and
>>
>> (B) the employee would be personally liable to the claimant according to Texas law; and
>
> (2) personal injury and death so caused by a condition or use of tangible personal or real property if the governmental unit would, were it a private person, be liable to the claimant according to Texas law.

TEX. CIV. PRAC. & REM.CODE ANN. § 101.021 (Vernon 2005).

The Hillises argue that section 101.0215 of the civil practice and remedies code is an independent waiver provision that waives municipalities' governmental immunity for all damages arising from all "governmental functions," including police services. *See generally id.* § 101.0215. They further argue that we embraced their interpretation of section 101.0215 in footnote 2 of our opinion in *City of Celina v. Blair*, 171 S.W.3d 608 (Tex.App.-Dallas 2005, no pet.). The City argues that the Hillises misinterpret *City of Celina* and that Texas courts have uniformly held that section 101.0215 is not an independent waiver of governmental immunity. *See, e.g., Sanders v. City of Grapevine*, 218 S.W.3d 772, 778 (Tex.App.-Fort Worth 2007, pet. denied) ("[Section 101.0215] does not provide an independent basis for a waiver of governmental immunity."); *City of Kemah v. Vela*, 149 S.W.3d 199, 203–04 n. 1 (Tex. App.-Houston [14th Dist.] 2004, pet. denied) (same); *accord City of Houston v. Rushing*, 7 S.W.3d 909, 914 (Tex.App.-Houston [1st Dist.] 1999, pet. denied); *City of Garland v. Jezari*, No. 05–99–02188–CV, 2000 WL 707289, at *2 (Tex. App.-Dallas June 1, 2000, no pet.) (not designated for publication).

■ We agree with the City that footnote 2 in our *City of Celina* opinion does not support the Hillises' interpretation of section 101.0215. That footnote states, in its entirety:

> The City's participation in the functions of constructing, designing, and maintaining roads is governmental in nature, rather than proprietary. Thus the City is civilly liable for damages pursuant to those functions only where the legislature has waived its sovereign immunity in the Act. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 101.0215(a)(3), (4).

171 S.W.3d at 610–11 n. 2. Section 101.0215 is not a free-standing waiver of governmental immunity. We hold that section 101.0215 does not provide an independent basis for a waiver of governmental immunity.

**C. Application of the law to the facts**

**1. Waiver by judicial admission**

■ The Hillises make a threshold argument that the City waived the defense of governmental immunity by a judicial admission in the City's live pleading (its original answer). The relevant passage from the City's answer follows:

> For further answer, Defendant, City of Dallas, invokes the defense of governmental immunity. The City would show that the allegations against it herein concern a governmental function, police protection, and that the limited waiver of governmental immunity set forth in Chapter 101 of the Texas Civil Practice and Remedies [Code] is applicable. In the unlikely event that Plaintiffs can prove a cause of action against the City, then Plaintiffs' monetary recovery would be governed by the limits set forth therein.

The Hillises argue that the second sentence in the foregoing passage constitutes an unequivocal admission that the statutory "waiver of governmental immunity . . . is applicable."

■ Assertions of fact, not pleaded in the alternative, in the live pleadings of a party are regarded as formal judicial admissions. *Holy Cross Church of God in Christ v. Wolf*, 44 S.W.3d 562, 568 (Tex. 2001). "A judicial admission must be a clear, deliberate, and unequivocal statement." *Regency Advantage Ltd. P'ship v. Bingo Idea–Watauga, Inc.*, 936 S.W.2d 275, 278 (Tex.1996) (per curiam). Reading the City's pleading as a whole, we conclude that the City did not judicially admit that its governmental immunity was waived as

to the Hillises' claims. The second sentence in the above quotation is contradicted by the assertion in the preceding sentence that the City "invokes the defense of governmental immunity." Even if we determined the paragraph to be equivocal, it nevertheless would not be a judicial admission. *See Price Pfister, Inc. v. Moore & Kimmey, Inc.*, 48 S.W.3d 341, 349 (Tex. App.-Houston [14th Dist.] 2001, pet. denied) ("Because the statement made by MKI's attorney was, at best, equivocal, it cannot constitute a judicial admission.").

We reject the Hillises' contention that the City judicially admitted that governmental immunity is inapplicable.

### 2. Liability for Perez's negligence

■ The first liability theory pleaded by the Hillises is that the City is liable because Perez negligently and directly caused Taylor Hillis's death by initiating and continuing a high-speed chase contrary to the no-chase policy of the Dallas Police Department. In its second issue on appeal, the City argues that it is immune as to this claim because Hillis's death did not arise from the use of a motor vehicle. The Hillises argue that there is a sufficient causal nexus between Perez's use of the patrol car and Taylor Hillis's death to satisfy section 101.021(1)(A). We agree with the City.

■ Under section 101.021(1)(A), governmental immunity is waived if several elements are met, one of which is that the injury or death sued upon must "arise[ ] from the operation or use of a motor-driven vehicle or motor-driven equipment." TEX. CIV. PRAC. & REM.CODE ANN. § 101.021(1)(A) (Vernon 2005); *see also LeLeaux v. Hamshire–Fannett Indep. Sch. Dist.*, 835 S.W.2d 49, 51 (Tex.1992) (holding that the "operation or use" in question must be operation or use by the governmental employee). The supreme

court has construed the "arises from" requirement to mean that the vehicle's use "must have actually caused the injury." *Dallas Area Rapid Transit v. Whitley*, 104 S.W.3d 540, 543 (Tex.2003) (internal quotations omitted). The causal nexus is not satisfied by the mere involvement of a vehicle, nor by an operation or use that "does no more than furnish the condition that makes the injury possible." *Id.* (internal quotations omitted). When an alleged cause is geographically, temporally, or causally attenuated from the alleged effect, that attenuation will tend to show that the alleged cause did no more than furnish the condition that made the effect possible. *See Dallas County Mental Health & Mental Retardation v. Bossley*, 968 S.W.2d 339, 343 (Tex.1998) (escaped mental patient's death on a freeway was "distant geographically, temporally, and causally" from the unlocked doors through which he escaped).

The only evidence admitted at the hearing on the City's plea to the jurisdiction was the video taken by the camera mounted in Perez's patrol car. The video shows the following sequence of events. At about 2:30 a.m. on October 6, 2006, Perez parked his patrol car on the street near an apartment complex. A few moments later, a motorcycle emerged from the complex, turned right without stopping, and proceeded down the street away from Perez. Perez immediately began to follow the motorcycle in his patrol car. About 45 seconds later, the video shows that the motorcycle was traveling about 51 miles per hour in a 35–mile–per–hour zone. At that point, Perez activated his vehicle's emergency lights. The motorcyclist (Hillis) accelerated and attempted to flee, thereby committing another traffic violation. *See* TEX. TRANSP. CODE ANN. § 545.421(a) (Vernon Supp. 2009) (forbidding a motorist from fleeing a police vehicle after being signaled to stop). Perez followed at

speeds reaching 78 miles per hour during this phase of the pursuit. A passenger on the motorcycle looked back at Perez at least once during this part of the pursuit. Less than a minute after Perez activated his emergency lights, Hillis entered southbound Central Expressway. His speed is unknown, but despite Perez's speed of 92 miles per hour, Hillis quickly pulled so far ahead of Perez as to be out of sight for a short time. Only by accelerating to over 100 miles per hour was Perez able to bring the motorcycle back into view as the two vehicles approached the exit ramp from Central Expressway to Interstate 635.

The vehicles entered the exit ramp leading to Interstate 635, both eastbound and westbound. Traffic entering the ramp passes a yellow traffic sign posting a speed limit of 45 miles per hour for the ramp. When Perez reached this point, his speed was about 107 miles per hour, but he made slight progress in catching up to Hillis. As traffic approaches the fork in the exit ramp for eastbound and westbound Interstate 635, it passes a second yellow traffic sign, illegible in the video, where the eastbound fork curves sharply to the left. As Hillis entered the left curve of the eastbound fork, he lost control of the motorcycle. He was still so far ahead of Perez that the video shows no details of the accident except for several flashes of sparks. Although Perez's speed was about 105 miles per hour at the moment of the accident, it still took Perez about ten seconds to reach the approximate area where Hillis had lost control of his motorcycle. There Perez stopped his car and got out to investigate.

The parties attached some documents to their filings relating to the City's plea to the jurisdiction, but they do not shed any additional light on the pivotal question of whether Perez's use of the patrol car caused the accident and the death of Taylor Hillis. In particular, the Hillises attached an expert report by a retired police officer to their response, and they point out that the expert stated in his report that the City's gross deficiencies in retaining, supervising, and disciplining Perez "were a direct causal factor in [Perez's] pursuit of Taylor Hillis and the subsequent fatal traffic accident." But this assertion is a bare conclusion and in any event has no bearing on whether Perez's use of the patrol car actually caused Hillis's death or merely furnished a condition that made his death possible. In sum, the video of the accident is the only relevant and competent evidence in the record.

We have found little Texas authority closely on point. The City brings several cases to our attention, but they are not very similar to this case factually and give us little guidance on the use-causation issue we must confront. *See, e.g., Whitley,* 104 S.W.3d at 541 (DART immune from claims by bus passenger who was ejected from bus and assaulted by others after ejection); *Tex. Natural Res. Conservation Comm'n v. White,* 46 S.W.3d 864, 869–70 (Tex.2001) (TNRCC immune from claims for property damage allegedly caused by nonuse of motorized pump); *Gipson,* 247 S.W.3d at 471 (city immune from claims for injuries allegedly caused by failure to timely send ambulance in response to 911 call).

Some Texas cases do indicate, however, that the chain of causation can be broken when the injury most directly results from the injured person's own decisions. One such case is *City of Sugarland v. Ballard,* 174 S.W.3d 259 (Tex.App.-Houston [1st Dist.] 2005, no pet.). In that case, police officers had arrested Mark Ballard and were transporting him in a patrol car when he escaped from the car and was killed shortly thereafter when hit by another car. *Id.* at 263. The court held that Ballard's

death was not caused by the use of the patrol car: "The actual cause of Mark's death was his deliberate decision to flee into freeway traffic and a separate car's hitting him there; the failure to secure Mark in the first place merely furnished the condition that made it possible for him to escape and then run into oncoming traffic." *Id.* at 266. *Ballard* thus shows that a person's deliberate decision to flee from police can undercut the claim that resulting injuries are "caused" by the police. We also take note of *Texas Department of Public Safety v. Grisham*, 232 S.W.3d 822 (Tex.App.-Houston [14th Dist.] 2007, no pet.). In that case, a policeman parked his car on the right shoulder with its emergency lights flashing, and passing motorist Grisham was injured when he switched to the left lane and struck a disabled vehicle on the left shoulder that partially obstructed his lane. *Id.* at 824. Although Grisham argued that the police car caused the accident by "funneling" him into the disabled vehicle, the court of appeals held that the use of the police car merely furnished the condition that made the injury possible; it did not actually cause the injury. *Id.* at 827. "In the end, Grisham's decision to change lanes and the collision with [the disabled] vehicle which followed actually caused his injuries." *Id.* In our view, this case is like *Ballard* and *Grisham* in that the only actual cause of Hillis's accident was his own decision to attempt to exit to eastbound Interstate 635 at a reckless rate of speed. At most, Perez's use of his police car only furnished the condition that made Hillis's accident possible.

A case from the Michigan Supreme Court is also instructive. In *Robinson v. City of Detroit*, the court considered two consolidated cases in which police pursuits ended in injuries to passengers in the fleeing vehicles. 462 Mich. 439, 613 N.W.2d 307, 312–13 (2000). Michigan had a similar statute waiving governmental immunity for injuries "resulting from" the negligent operation of a government-owned motor vehicle. *Id.* at 315. Observing that waivers of immunity should be narrowly construed, the court held that the plaintiff passengers could not "satisfy the 'resulting from' language of the statute where the pursuing police vehicle did not hit the fleeing car or otherwise physically force it off the road or into another vehicle or object." *Id.* at 316. Thus, the city of Detroit's immunity was not waived. *Id.* at 322. Using similar logic, we conclude that the claimants in this case cannot satisfy the causation standard applicable in Texas. Perez did not hit Hillis's motorcycle with his patrol car. He did not physically force Hillis off the road or into another vehicle or object. At the time of the accident, Perez's operation of his vehicle was so physically and temporally separated from Hillis's motorcycle that, as a matter of law, Perez's operation of his vehicle did not actually cause Hillis's accident.

The Hillises rely on the plurality opinion in *Travis v. City of Mesquite*, 830 S.W.2d 94 (Tex.1992). In that case, two off-duty police officers were working at a truck stop as late-night security guards. *Id.* at 96. Suspicious that the occupants of a car in the back parking lot were involved in prostitution, the officers obtained the driver's identification and asked him to drive to the front parking lot and wait for them there. *Id.* Instead, the driver fled the scene, and the off-duty police officers followed him as he drove the wrong way down a one-way highway access road. *Id.* The fleeing driver then crashed head-on into another motorist's car, killing one person and injuring others. *Id.* The victims of the crash sued the city and the police officers for negligence, among other liability theories. *Id.* at 96–97. The defendants sought summary judgment on several theories including the absence of proximate

cause, and the trial court granted summary judgment for the defendants. *Id.* at 97. The court of appeals affirmed based on the absence of proximate cause, but the supreme court reversed based on the following causation analysis:

> The ... summary judgment evidence raises the inference that [the fleeing motorist] drove down the access road at excessive speed because of the police decision to give chase. There was summary judgment evidence that the conduct of the police officers was a cause in fact of the accident in question, and of the injuries for which the plaintiffs seek recovery.

*Id.* at 98.

We conclude that *Travis* is distinguishable. First, the defendants in *Travis* actually conceded "that fact issues remain[ed] requiring reversal and remand for trial." *Id.* at 99. The City has made no such concession in this case. Second, it appears the defendants in *Travis* did not argue immunity as a separate defense on appeal because the *Travis* court analyzed the case only as a general proximate-cause case, not an immunity case. *See id.* at 99–100. Thus, the *Travis* court considered only the broad question of whether general police negligence caused the accident in question; it did not consider the narrower issue of whether the *use* of a police car was the actual cause of the accident in question. By contrast, this case squarely presents the question of what constitutes a sufficient causal nexus between the use of a police vehicle and a subsequent accident.

For the foregoing reasons, we conclude as a matter of law that Perez's use of his patrol car was too attenuated from Hillis's conduct for that use to constitute a cause of Hillis's injuries. The trial court erred by failing to dismiss the Hillises' claim based directly on the alleged negligence of Perez.

### 3. Liability for negligent implementation of policy or entrustment

In its first issue on appeal, the City argues that it is immune from the Hillises' claims based on the City's allegedly negligent implementation of policy and negligent entrustment of a vehicle to Perez. We address each theory in turn.

▄▄▄ The Hillises argue as a general proposition that a governmental unit is not immune if an injury is caused by a negligent implementation of a governmental policy. This is not a correct statement of the law. There is no general waiver of immunity for claims that an officer negligently carried out governmental policy. *Perez v. City of Dallas,* 180 S.W.3d 906, 911 (Tex.App.-Dallas 2005, no pet.); *City of Garland v. Rivera,* 146 S.W.3d 334, 338 (Tex.App.-Dallas 2004, no pet.). That is, unless the plaintiff's negligent-implementation-of-policy claim comes within some statutory waiver of immunity, immunity is not waived as to that claim. *Rivera,* 146 S.W.3d at 338. The Hillises rely on judicial statements like the following: "If ... an officer or employee acts negligently in carrying out [government] policy, government liability *may* exist under the Act." *State v. Terrell,* 588 S.W.2d 784, 788 (Tex. 1979) (emphasis added). The point of statements such as these, however, is not to recognize a new category of waiver of governmental immunity for "negligent implementation of policy," but rather to distinguish negligent-implementation claims, for which immunity is waived *if* some other waiver provision applies, from claims for negligent *formulation* of policy, for which immunity is retained. *See* Tex. Civ. Prac. & Rem.Code Ann. § 101.056 (Vernon 2005) (retaining immunity for a governmental unit's discretionary decisions); *Stephen F. Austin State Univ. v. Flynn,* 228 S.W.3d 653, 657 (Tex.2007) (construing section

101.056). In this case, this means that the Hillises' negligent-implementation claim must satisfy section 101.021, including a causal nexus between the use of the patrol car and Taylor Hillis's death. The City has refuted that causal nexus as a matter of law. Accordingly, the trial court erred by failing to dismiss the Hillises' claim for negligent implementation of policy.

■ As to negligent entrustment, the City argues that immunity is never waived for such claims because the act of entrusting a motor vehicle does not constitute the operation or use of a motor vehicle. The City relies on two Texas appellate decisions for support. *See Los Fresnos Consol. Indep. Sch. Dist. v. Rivas*, No. 13–04–168–CV, 2005 WL 1981494, at *6 (Tex. App.-Corpus Christi Aug. 18, 2005, pet. denied) (mem. op.); *Waldon v. City of Longview*, 855 S.W.2d 875, 880 (Tex.App.-Tyler 1993, no writ). We need not decide whether this general proposition of law is correct. A claim against a municipality arising from the performance of a governmental function is barred by immunity unless a statutory waiver of immunity applies. *See City of Dallas v. Blanton*, 200 S.W.3d 266, 271 (Tex.App.-Dallas 2006, no pet.). We have already concluded that there was not a sufficient causal nexus between Perez's operation of his patrol car and Taylor Hillis's death to satisfy the only statutory waiver in play, section 101.021. Accordingly, the City has established that its governmental immunity was not waived as to the Hillises' negligent-entrustment claim, and the trial court erred by failing to dismiss that claim for lack of jurisdiction.

### 4. Cross-appeal

In their cross-appeal, the Hillises argue that the trial court erred by dismissing their claims for negligent hiring, retention, and assignment; negligent supervision, training, and direction; and negligent failure to discipline. They contend that section 101.021 waives immunity as to these liability theories because the negligent conduct alleged under each theory "ultimately resulted in the negligent operation of the motor vehicle that caused the death of Taylor Hillis." We have already concluded that the evidence conclusively refutes the causal nexus between Perez's operation of his patrol car and Hillis's death. Accordingly, the trial court correctly determined that governmental immunity was not waived as to these theories of liability, and it properly dismissed those claims for lack of jurisdiction.

### 5. Duty

In light of the foregoing, we need not address the City's third issue, in which it argues that it owed no legal duty to Hillis as a suspect fleeing from a police officer. We express no opinion on that issue.

### IV. CONCLUSION

The City established that governmental immunity defeats every claim asserted by the Hillises. Thus, the trial court lacks subject-matter jurisdiction over this lawsuit.

We affirm the trial court's order to the extent the court granted the City's plea to the jurisdiction and dismissed the Hillises' claims for negligent hiring, retention, and assignment; negligent supervision, training, and direction; and negligent failure to discipline. We reverse the trial court's order to the extent the court denied the City's plea to the jurisdiction, and we render judgment dismissing the case for lack of subject-matter jurisdiction.