

# NUMBER 13-23-00311-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

AMBER CERVANTES,                                                          Appellant,

v.

CITY OF CORPUS CHRISTI,                                                   Appellee.

## ON APPEAL FROM THE COUNTY COURT AT LAW NO. 1
## OF NUECES COUNTY, TEXAS

# MEMORANDUM OPINION

**Before Justices Silva, Peña, and Fonseca**
**Memorandum Opinion by Justice Peña**

Appellant Amber Cervantes appeals the trial court's grant of a plea to the

jurisdiction in favor of appellee the City of Corpus Christi (the City).[1] Cervantes argues

---

[1] Cervantes also sued Hector Garcia, Vilma Ramos Garcia, and Greg Garcia. These defendants are named in the order granting the City's plea but are not parties to this appeal.

that the trial court erred in finding that there was no causal connection between the use of a City police vehicle during a high-speed chase and injuries sustained by a third party who was struck by the individual being pursued. We affirm.

## I.    BACKGROUND

This case stems from injuries sustained by Cervantes on December 13, 2013, when she was struck by a vehicle driven by Hector Garcia during a high-speed chase with officers from the Corpus Christi Police Department (CCPD). On the night in question, CCPD officers Christoper Potter and Ruben Ramirez were dispatched to respond to a loud-music complaint at around 11:30 p.m. at Treyway Terrace Apartments. According to Ramirez's affidavit, after arriving at the apartment complex he "was flagged down by a uniformed, City of Driscoll Police Officer, Michael Hernandez." Hernandez then "informed [Ramirez] that he had been following a vehicle that was swerving and further advised the driver was intoxicated." Ramirez averred that:

> As Officer Hernandez was explaining the situation to me, the suspect driver approached his vehicle, a white Jeep Grand Cherokee, and climbed into the driver's seat. I exited my unit and approached the Grand Cherokee. As I got closer, the suspect vehicle fled the scene through the complex toward Treyway Lane, and the vehicle's headlights were not illuminated.
>
> Officer Potter quickly initiated pursuit of the suspect vehicle north on Treyway Lane with emergency lights and sirens on, and I followed in my police vehicle with my emergency lights illuminated and my siren also activated. Our pursuit continued up and down several residential streets until the suspect vehicle drove onto Tanglewood Drive from Mandy Lane, when the suspect vehicle left the roadway and drove into Glen Arbor Park.
>
> Neither Officer Potter nor I pursued the suspect vehicle through the park. Seconds later, Lieutenant Brandi Moss ordered us to cancel the pursuit. Both Officer Potter and I turned off our overhead lights and sirens, and continued west on Tanglewood Dr.
>
> After turning North on South Staples Street, Officer Potter and I

2

observed the suspect vehicle driving west on Curtis Clark Drive at a high rate of speed. The suspect vehicle failed to stop at the stop sign on South Staples Street and crashed into two vehicles.

As part of its plea to the jurisdiction, the City also provided Potter's affidavit,

wherein he explains the following:

Knowing that the suspect had just fled from Officer Ramirez and fleeing at a high rate of speed with his lights off in the apartment complex, I determined that the driver of the vehicle posed a threat to public safety, and I had to stop him to avoid harm so I did what any other reasonable prudent police officer would – pursue the suspect to avoid injury and damage. I decided to exercise my authority under the CCPD's pursuit policy and pursued the suspect with siren and emergency lights on. I traveled behind the suspect at Treyway Lane where I got behind the vehicle. The vehicle accelerated at a high rate of speed northbound on Treyway Lane. The vehicle was driving recklessly all over the roadway as it came to Williams Drive, and then turned westbound from Treyway Lane. The vehicle proceeded southbound, still driving at a high rate of speed, and made several more erratic turns in an effort to evade. I continued to pursue the vehicle with my overhead lights and sirens, but at all times, I was never close enough to read the license plate. In fact, I was unable to get a license plate due to the vehicle being so far ahead of me.

Once the vehicle turned westbound onto Tanglewood Drive, the driver jumped the curb, cutting recklessly through Glen Arbor Park. I did not follow the suspect vehicle across, but rather continued on Tanglewood Drive. From a growing distance, I then observed the Jeep drive through the metal chain-link fence into the South Pointe Apartments located at 5725 Curtis Clark Drive.

I turned onto Bonner Drive, losing sight of the suspect vehicle. Shortly thereafter, my supervising officer, Lieutenant Brandi Moss, directed me over the radio to cease pursuit of the suspect vehicle. I promptly cancelled pursuit by turning off my emergency lights and sirens, as I approached the stop sign at Bonner Drive and South Staples Street.

After yielding to oncoming traffic for several seconds, I turned right from the stop sign and proceeded northbound on South Staples Street. I did not reactivate my lights or sirens; as far as I was concerned, the pursuit of the white Grand Cherokee was terminated. Over the radio, I then heard Officer Daniel Sotello announce that the Jeep had exited South Pointe Apartments, dragging a chain link fence. Even then, I did not reactivate my lights or sirens.

As I was getting closer to the intersection of Curtis Clark Drive and South Staples Street, I observed the Grand Cherokee moving westbound on Curtis Clark, by my estimation, traveling at speeds of 80 miles per hour. I saw the Grand Cherokee fail to stop at the stop sign at the corner of Curtis Clark Drive and South Staples Street, and barrel straight through the intersection. First, I witnessed the Grand Cherokee strike a car traveling northbound on South Staples Street and then a maroon Nissan Altima that was traveling southbound on South Staples Street. When the vehicles collided, the white Grand Cherokee got airborne causing it to go end over end, landing on its roof.

The male driver of the Grand Cherokee was thrown from the white vehicle and ended up on the adjacent sidewalk. I ran up to the female driver of the maroon vehicle who was unconscious. Medics with the City of Corpus Christi's Fire Department arrived shortly thereafter and attended to the injured. The driver of the maroon Nissan Altima was identified as Amber Cervantes. I identified the driver of the white Grand Cherokee as Hector Delaney Garcia. Both subjects were transported to Spohn Memorial Medical Center.

. . .

I attest that at no time, while operating my City-assigned police car on December 13, 2013, immediately before or after Mr. Garcia's Grand Cherokee and the Plaintiff's Nissan Altima collided, did my patrol unit come into contact with Mr. Garcia's vehicle. Specifically, I never exerted any control over Mr. Garcia's car or direct its movements in any way. I did not pull up beside Mr. Garcia's vehicle, attempt to bump it, or otherwise use my CCPD unit to block or interfere with traffic. Neither I nor any police officer employed offensive tactics to bring Mr. Garcia's vehicle to a stop. Neither I nor any police officer deployed controlled tire deflation devices. In fact, besides Officer Ramirez who always remained behind me, no other police unit ever joined me in pursuit, as there was insufficient time for any officer to do so. . . . All said, my entire pursuit lasted approximately three minutes, starting from the time I initiated pursuit shortly after Mr. Garcia started to flee, until I terminated pursuit by deactivating my lights and sirens. Throughout my pursuit, I never got near enough to Mr. Garcia's vehicle to engage any such tactical measures. In spite of me switching off my lights and sirens, the Grand Cherokee did not immediately slow down; instead, it continued at a high rate of speed, weaving on residential streets-until he threw all caution to the wind. By the time the Grand Cherokee drove through the chain link fence into the South Pointe Apartments, it was all but gone from my line of sight and the pursuit was terminated right after. By the time

of the accident, the pursuit had been terminated for over 20 seconds.[2]

Cervantes sued the City, alleging that Potter and Ramirez's negligence caused Cervantes's injuries, and that the City's immunity was waived under the Texas Tort Claims Act (TTCA). Cervantes alleged that after the initiation of the pursuit, Potter and Ramirez continued their pursuit negligently, arguing as follows:

> Potter and Ramirez ha[d] a duty to exercise the degree and of care [sic] that a reasonably careful and prudent person would use to avoid harm to others under circumstances similarly [sic] to those described herein. Potter and Ramirez negligently used a motor vehicle, namely their police cruiser. Such disregard for this duty consisted of, but [was] not limited to, the following acts and/or omissions:
> a. Failing to timely apply the brakes.
> b. Failing to maintain a proper lookout.
> c. Failing to maintain proper control of vehicle.
> e. Driving Defendant's vehicle at a rate of speed greater than that at which a person of ordinary prudence would have driven under the same or similar circumstances.
> f. Violation the terms and provisions of the Texas Driver's Handbook and Texas Transportation Code.
> g. Failing to follow the protocols and procedures in CCPD Emergency and Pursuit Driving Policy.

After engaging in their pursuit, Cervantes alleges that Moss instructed the officers to terminate the pursuit, and "[a]pproximately 15–20 seconds later, Garcia runs a stop sign at [a] high [rate of] speed at Curtis Clark and Staples, violently colliding with" Cervantes.

In asserting her claims, Cervantes pointed to the CCPD's pursuit policy. Critically, under a section entitled "Mandatory Termination of Pursuits," the policy provides that "Officers are prohibited from engaging in pursuits resulting solely from traffic offenses,

---

[2] This amount of time is consistent with Cervantes's allegations in her live petition, wherein she claims that Moss "instruct[ed] [Potter] to stop the high-speed pursuit," and "[a]pproximately 15-20 seconds later, Garcia r[an] a stop sign at [a] high [rate of] speed at Curtis Clark and Staples[.]"

5

non-violent felonies, evading arrest, or any misdemeanor including DWI."[3] She argued that the officers' "actions violated the law and ordinance[s], as well as violated and negligently carried out [the City's] 'EMERGENCY AND PURSUIT DRIVING' policy." This policy permits CCPD officers to engage in emergency pursuits in certain limited circumstances, by "operating a[s] an authorized [e]mergency vehicle and utilizing simultaneously all emergency equipment," and gives officers "[t]he authority to drive contrary to regulatory codes[.]" The policy defines "[p]ursuit termination" as follows: "the total abandonment of the pursuit. Officers, when ordered by a supervisor to terminate a pursuit will de-active their emergency lights and sirens, reduce speed to legal limits, and notify dispatch that they are clear and available for calls."

The City filed a plea to the jurisdiction arguing that it retained immunity from suit because Cervantes had failed to establish a causal nexus between the officers' conduct and her alleged injuries, because the officers "exercised absolutely no control over the movements of" Garcia's vehicle, and the officers had abandoned their pursuit before the collision. The City argued that "[t]he evidence shows that the cause of the accident in question was the fact that . . . Garcia failed to stop at a stop sign," and "the undisputed facts here demonstrate that the accident occurred after the pursuit ended and that Defendant Garcia nevertheless continued his flight." The City also argued that the trial court lacked jurisdiction because "the officers were responding to an emergency." *See* TEX. CIV. PRAC. & REM. CODE ANN. § 101.055(2). Evidence was attached to the plea, including affidavits by Ramirez, Potter, and CCPD Deputy Chief William Troy Breedlove,

---

[3] The City does not dispute that Potter's initiation of the pursuit was in violation of the City's policy.

6

as well as an incident report authored by Potter.

Cervantes filed a response with evidence including transcripts of deposition testimony of Ramirez and Potter, a copy of CCPD's written pursuit policy, and dashcam recordings from the officers' vehicles. In her response, Cervantes argued that the conduct of Sotello, who was not mentioned in her live petition, defeated the City's plea. In particular, Cervantes argued as follows:

> Most astounding about the City's plea is not just the ignorance of the evidence and Texas law but also the City's false contention that a "pursuit" of suspect Hector Garcia was "terminated," and Potter and Ramirez had ceased pursuit well-before the collision. Yet, the City's plea curiously fails to even mention the third officer, Daniel Sotello, who continued the high-speed chase started by Potter and Ramirez even after they were instructed to cease the "pursuit."
>
> Even though Lieutenant Brandi Moss ha[d] ordered the officers to terminate the high-speed chase, when the suspect passed Sotello heading west on Curtis Clark, Sotello reactivated his lights, turned his vehicle around, and began chasing the suspect at high speed—chasing the suspect at a speed of 80 miles per hour directly into the Staples and Curtis Clark intersection where the collision severely injuring Ms. Cervantes occurred[.]
>
> . . .
>
> Sotello's dashcam video clearly reflects Officer Sotello activated his lights at the South Pointe Apartments and chased the suspect down Curtis Clark and into the intersection at which Ms. Cervantes was injured. The chase had not been over "for over twenty full seconds" as the City claims; Officer Sotello was in chase.
>
> The revelation of Sotello's involvement in the chase and the collision—as well as much other evidence—create jurisdictional fact issues that must be determined by a jury.

(Emphasis removed).

The City filed a reply and objected to "[a]ny new theories of liability not raised in [Cervantes's] pleadings," and noted that Sotello was never referenced in Cervantes's

petition.[4] After a hearing, the trial court asked the parties to brief whether Sotello's

conduct could be considered in evaluating the City's plea to the jurisdiction. In her brief,

Cervantes argued as follows:

> First, Sotello continuing the reckless chase is relevant to whether the other named officers had started the chase and had continued to engage together with Sotello in the dangerous pursuit with their vehicles. The officers were driving their cars to pin the suspect into an intersection, and Sotello's conduct is relevant to the factual question of whether the individually named officers caused injury through the reckless use of their motor vehicles in this dangerous chase. The fact that Sotello indisputably engaged in the continued reckless conduct tends to make it more probable than not that the other individually named officers had acted in concert with Sotello and whether their conduct foreseeably led to the accident. The City argues that the other officers had ceased the chase, but that is a fact issue, and it is for a jury to decide which way to draw an inference from the facts regarding Sotello's participation and continuation of the pursuit. So Sotello's acts are relevant to at least two fact questions: (a) whether the dangerous chase had terminated, and (b) whether he was present as a support unit part of the result of the negligence [sic]. Those fact issues preclude dismissal on a jurisdictional plea.
>
> . . .
>
> Plus, [Cervantes] is not adding a new theory of liability but, rather, [she] provided evidence of Sotello in response to Defendant's plea regarding fact issues on questions of liability arising from the conduct of the other officers who were named in the pleadings. The evidence shows Potter and Ramirez started the chase even though they never should have done so. The evidence shows Sotello supported the other officers, and he wouldn't have been involved but for the acts of Potter and Ramirez. In his support role, Sotello was headed where he thought the suspect would be. The suspect saw Sotello, and Sotello activated his lights and chased the suspect into an intersection. Ramirez and Potter turned off their lights, and there is a fact issue regarding whether they continued to follow in pursuit to help capture the suspect in a dangerous chase that never should have occurred.

(Emphasis removed).

At another hearing on the City's plea, the trial court admitted a fifty-eight second

---

[4] The City does not rely on this argument on appeal.

portion of Sotello's dashcam footage into the record. One second into the footage, the footage's time stamp reads as "11:36:08" p.m. At the beginning of the video, Sotello's lights and sirens are off. After making a single turn, Sotello approaches Garcia going the opposite direction and they pass each other at around 11:36:22 p.m. Sotello then continues going the opposite direction away from Garcia, and does not change direction until 11:36:35 p.m., when he begins to turn right into the entry of the South Pointe Apartments. Sotello does not active his lights until 11:36:37 p.m. Sotello remains stationary with his lights activated and does not begin reversing out of the entry to the apartments to turn around and follow Garcia until 11:36:50 p.m. By the time that Sotello is fully turned around and fully accelerating, the time is 11:36:58 p.m., or approximately thirty-six seconds after passing Garcia going the opposite direction.

The trial court granted the City's plea to the jurisdiction, and in its order found "that [Cervantes] has failed to establish the requisite causal nexus." This accelerated interlocutory appeal followed. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 51.014(a)(8) (stating that an immediate appeal may be taken from an interlocutory order granting or denying a plea to the jurisdiction filed by a governmental unit); TEX. R. APP. P. 28.1(a).

## II.    STANDARD OF REVIEW AND APPLICABLE LAW

A plea to the jurisdiction is a dilatory plea used to defeat a cause of action without considering whether the claims asserted have merit. *Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 554 (Tex. 2000). The plea challenges the trial court's subject matter jurisdiction. *Id.* Whether a trial court has subject matter jurisdiction is a question of law that we review de novo. *Sw. Elec. Power Co. v. Lynch*, 595 S.W.3d 678, 682 (Tex. 2020).

"A jurisdictional plea may challenge the pleadings, the existence of jurisdictional

9

facts, or both. When a jurisdictional plea challenges the pleadings, we determine if the plaintiff has alleged facts affirmatively demonstrating subject-matter jurisdiction." *Alamo Heights Indep. Sch. Dist. v. Clark*, 544 S.W.3d 755, 770 (Tex. 2018) (citations omitted). "If, however, the plea challenges the existence of jurisdictional facts," as here, "we must move beyond the pleadings and consider evidence when necessary to resolve the jurisdictional issues, even if the evidence implicates both subject-matter jurisdiction and the merits of a claim." *Id.* at 770–71 (citations omitted). The standard when considering such a plea generally mirrors the standard for considering a traditional motion for summary judgment under Texas Rule of Civil Procedure 166a(c). *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 228 (Tex. 2004). We take as true all evidence favorable to the non-movant and we indulge every reasonable inference and resolve any doubts in the non-movant's favor. *Id.* at 228. "If the evidence creates a fact question regarding the jurisdictional issue, then the trial court cannot grant the plea to the jurisdiction, and the fact issue will be resolved by the fact finder." *Id.* at 227–28. "However, if the relevant evidence is undisputed or fails to raise a fact question on the jurisdictional issue, the trial court rules on the plea to the jurisdiction as a matter of law." *Id.*

"Sovereign immunity protects the [s]tate from lawsuits for money damages," *Tex. Nat. Res. Conservation Comm'n v. IT-Davy*, 74 S.W.3d 849, 853 (Tex. 2002), and "political subdivisions derive governmental immunity from the state's sovereign immunity." *City of Houston v. Williams*, 353 S.W.3d 128, 134 (Tex. 2011) (noting that "[g]overnmental immunity is distinct from sovereign immunity, and refers to the protection afforded to political subdivisions such as counties, cities, school districts, and others" (citation omitted)). Political subdivisions are entitled to governmental immunity unless it

has been clearly and unambiguously waived by the Legislature. *Reata Const. Corp. v. City of Dallas*, 197 S.W.3d 371, 374 (Tex. 2006); *see* TEX. GOV'T CODE ANN. § 311.034. Absent waiver, sovereign immunity deprives a trial court of subject-matter jurisdiction. *Reata*, 197 S.W.3d at 374.

> The TTCA waives immunity for
>
> personal injury . . . proximately caused by the wrongful act or omission or the negligence of an employee acting within his scope of employment if . . . the . . . personal injury . . . arises from the operation or use of a motor-driven vehicle or motor-driven equipment.

TEX. CIV. PRAC. & REM. CODE ANN. § 101.021(1)(A). A plaintiff must show that there is a "nexus between the operation or use of the motor-driven vehicle or equipment and a plaintiff's injuries." *Dall. Area Rapid Transit v. Whitley*, 104 S.W.3d 540, 543 (Tex. 2003) (citations omitted); *see Ryder Integrated Logistics, Inc. v. Fayette Cnty.*, 453 S.W.3d 922, 929 (Tex. 2015) (noting that plaintiffs can show causation under the TTCA by "demonstrating proximate cause," which includes but-for causation, or "cause in fact," and "foreseeability" (citation omitted)). "This nexus requires more than mere involvement of property." *Id*. (citation omitted). "Rather, 'the [vehicle]'s use must have actually caused the injury.'" *Id*. (alterations in original) (quoting *Tex. Nat. Res. Conservation Comm'n v. White*, 46 S.W.3d 864, 869 (Tex. 2001)). "Thus, . . . the operation or use of a motor vehicle 'does not cause injury if it does no more than furnish the condition that makes the injury possible.'" *Id.* (quoting *Dall. Cnty. Mental Health & Mental Retardation v. Bossley*, 968 S.W.2d 339, 343 (Tex. 1998)). Accordingly, "[w]hen an alleged cause is geographically, temporally, or causally attenuated from the alleged effect, that attenuation will tend to show that the alleged cause did no more than furnish the condition that made the effect possible." *City of Dallas v. Hillis*, 308 S.W.3d 526, 532 (Tex. App.—Dallas 2010, pet.

11

denied); *see Bossley,* 968 S.W.2d at 343 (finding that an escaped mental patient's death on a freeway was "distant geographically, temporally, and causally" from the unlocked doors through which he escaped).

In interpreting the TTCA, we must be mindful that "any purported statutory waiver of sovereign immunity should be strictly construed in favor of retention of immunity." *Prairie View A & M Univ. v. Chatha*, 381 S.W.3d 500, 513 (Tex. 2012) (citing *Wichita Falls State Hosp. v. Taylor*, 106 S.W.3d 692, 696 (Tex. 2003)); *see also* TEX. GOV'T CODE ANN. § 311.034 (noting that "a statute shall not be construed as a waiver of sovereign immunity unless the waiver is effected by clear and unambiguous language").

### III.   DISCUSSION

Cervantes argues on appeal that her evidence creates a fact issue as to causation, and that the City may not rely on the emergency exception to the TTCA because the trial court failed to rule on the exception below. *See* TEX. CIV. PRAC. & REM. CODE § 101.055(2) (providing that the TTCA does not apply to "a claim arising . . . from the action of an employee while responding to an emergency call or reacting to an emergency situation if the action is in compliance" with the relevant laws and ordinances or, in the absence of such laws and ordinances, "not taken with conscious indifference or reckless disregard for the safety of others").[5]

---

[5] Cervantes makes much of the fact that at the time of the accident, Moss had told the officers to disengage the pursuit, and she points to certain CCPD policies that the officers allegedly violated when initiating and continuing their pursuit of Garcia. In direct response to the City's causation concerns, Cervantes suggests that the alleged impropriety in initiating the pursuit somehow trumps any concerns that the City raises regarding causation, calling the City's causation argument a "distraction." We cannot agree with Cervantes that any alleged impropriety in initiating or continuing the pursuit somehow weakens her causal burden, especially considering that we must strictly construe the statutory term at issue, "arises from," in favor of the retention of immunity. *See Prairie View A & M Univ. v. Chatha*, 381 S.W.3d 500, 513 (Tex. 2012). The TTCA requires that the vehicle's use "must have actually caused the injury," and the "mere

12

## A.    Potter and Ramirez

As to causation, Cervantes argues that her case is analogous to *City of El Paso v. Cangialosi*, where the Eighth Court of Appeals affirmed the trial court's denial of a plea to the jurisdiction in a case involving a police chase. 632 S.W.3d 611, 626 (Tex. App.—El Paso 2020, no pet.). In *Cangialosi*, an officer was pursuing a suspect in an unmarked vehicle, causing the suspect to speed, at which point the officer lost sight of the suspect's vehicle "as it crowned over a hill." *Id*. at 618. When the officer "regained visual," he saw that the suspect had collided into the plaintiff's car, resulting in the death of the plaintiff's mother. *Id*. The officer "then collided with another vehicle that stopped just short of the first collision." *Id*.

In *Cangialosi*, "[t]he City essentially argue[d] for a bright-line rule for police pursuit cases, such that if the officer's vehicle is not involved in the impact, and does not nudge, re-direct, or bump the fleeing suspect so as to contribute to the accident, immunity should bar the suit." *Id*. at 626. The Eighth Court of Appeals rejected that argument. It surveyed various cases involving police chases where causation under the TTCA was at issue, and concluded:

> Ultimately, the key to reconciling these cases is to identify the causative factor of the accident and determine if it is related to the police's use of a motor vehicle. In *Hillis*, for instance, the immediate cause of the accident was the fleeing suspect's decision to take an exit at too great a speed. *Hillis*, 308 S.W.3d at 534. The pursuing officer had nothing to do with causing the suspect to take the exit. Accordingly, the pursuit itself only furnished the condition making the fatal decision to exit the freeway possible. Likewise, in *Williams* [*v. City of Baytown*,] the cause of the accident was the fleeing suspect running over tire spikes and then rear-ending a parked car. *Williams*, 467 S.W.3d [566,] 577 [(Tex. App.—Houston [1st Dist.] 2015, no

involvement" of a vehicle is not enough. *Dall. Area Rapid Transit v. Whitley*, 104 S.W.3d 540, 543 (Tex. 2003).

13

pet.)]. That action was far attenuated from the earlier action of trying to box-in the suspect at an entirely different location. Conversely, in *Ryder* one possible accident causing event was the sheriff directing headlights into on-coming traffic. *Ryder*, 453 S.W.3d at 926. Because the sheriff was responsible for parking his vehicle in that position, immunity was waived.

*Id.* at 625.

The Eighth Court of Appeals ultimately concluded that the plaintiff had presented enough evidence to create a fact issue as to causation, reasoning as follows:

> Based on [the fleeing suspect] Roacho's statement, the causative factor of the accident here was his coming over the crest of the hill on Stanton at too high a rate of speed. Once on the downslope, he arguably did not have time to stop before impacting [plainitff's] car. A causative factor of the accident was his speed on a moderately busy street. And the pursuit by the police in their vehicles is the act that is *alleged* to have caused Roacho to speed, as he fled to get away. In this case, it was the pursuit itself that [led] to the speed, which was the claimed cause of the accident. And as some of [plaintiff's] proofs suggest, the pursuit was by unmarked vehicles which might have only accentuated the panic which Roacho claims drove his decision to flee.

*Id*. at 625–26.

The facts in this case, however, are distinguishable from *Cangialosi*. Critically, in *Cangialosi*, it was the *ongoing pursuit* of a suspect by the police that was alleged to have caused the accident, not the mere *initiation* of the pursuit. *See id*. In *Cangialosi*, the evidence included the pursuing officer's statement that he was "following" the suspect and "driving fast." *Id*. at 618. The City of El Paso also conceded that the pursuing officer "was following Roacho's white Acura for the express purpose of assisting" another officer conduct a traffic stop. *Id*. at 621. Unlike the present case, *Cangialosi* does not involve a pursuit that was allegedly terminated before the accident occurred.

We believe the facts of this case are closer to *City of Pharr v. Herrera*, another police pursuit case. *See* No. 13–15–00133–CV, 2017 WL 929483, at *1 (Tex. App.—

14

Corpus Christi–Edinburg Mar. 9, 2017, no pet.) (mem. op.). In *Herrera*, the appellees "relied on the theory that [the pursuing officer's] initiation of the chase caused the accident," and the "[a]ppellees d[id] not disagree that [the pursuing officer] was not present when the accident occurred and had ended his pursuit." *Id*. at *2. The *Herrera* court reasoned as follows:

> The evidence in this case does not support a casual nexus between Officer Gonzalez's use of his vehicle and the plaintiff's injuries. *See Ryder Integrated Logistics*, 453 S.W.3d at 927. Instead, the evidence shows that Officer Gonzalez was not present when the accident occurred and had stopped pursuing Quintero; and, we conclude that his action of initiating the chase was too physically and temporally separated from Quintero's conduct to constitute a cause of the alleged injuries in this case. *See* [*Hillis*], 308 S.W.3d at 532 ("When an alleged cause is geographically, temporally, or causally attenuated from the alleged effect, that attenuation will tend to show that the alleged cause did no more than furnish the condition that made the effect possible."). As such, appellees' evidence does not demonstrate that Officer Gonzalez's negligent use of his motor vehicle caused the accident.

*Id.* at *3.

The City asks us to adopt our reasoning in *Herrera*, arguing that "the undisputed facts demonstrate that the accident occurred after the pursuit ended and that Garcia continued his flight." *See id.* at *2. We agree with the City. The City's evidence establishes that, as in *Herrera*, the pursuit by Potter and Ramirez had terminated at the time of the complained-of collision. This conclusion is supported by the incident report wherein Potter notes that after Moss advised him to stop the pursuit, he "turned off [his] emergency lights/sirens at Staples/Bonner and cancelled following the vehicle." Ramirez's affidavit

further establishes that Potter and Ramirez had turned off their lights and sirens shortly before the collision and were not in close proximity to Garcia at the time of the accident.[6]

Consistent with our reasoning in *Herrera*, we conclude that the evidence does not support a causal nexus between Potter or Ramirez's use of their vehicles and Cervantes's injuries, because the evidence shows that they were not near the accident when it occurred, and they had terminated their pursuit. 2017 WL 929483, at *3 (citing *Ryder*, 453 S.W.3d at 927). As we recognized in *Herrera*, this conclusion is supported by the proposition that "a person's deliberate decision to flee from police can undercut the claim that resulting injuries are 'caused' by the police." *Hillis*, 308 S.W.3d at 534; *see, e.g., City of Sugarland v. Ballard*, 174 S.W.3d 259, 266 (Tex. App. 2005) (finding no direct nexus between an officer's failure to properly secure an individual in an police car and the individual's subsequent injuries resulting from his fleeing from the car and running into traffic, because *"[t]he actual cause of [his] death was his deliberate decision to flee into freeway traffic and a separate car's hitting him there*; the failure to secure [him] in the first place merely furnished the condition that made it possible for him to escape and then run into oncoming traffic" (emphasis added)). For example, in *Hillis*, the plaintiffs alleged that:

> On October 6, 2006, Dallas police officer Fernando Perez attempted to initiate a routine traffic stop of Taylor Hillis, who was operating a motorcycle. When Hillis did not stop, Perez pursued in his police car at speeds

---

[6] Moreover, Cervantes's representations to the trial court impliedly conceded that Potter and Ramirez terminated their pursuit. For example, in direct response to the City's argument that "[a]t the time of the collision, no officer is seen pursuing Defendant Garcia," Cervantes argued as follows: "Rather, Sotello's dashcam video clearly reflects Officer Sotello activated his lights at the South Pointe Apartments and chased the suspect down Curtis Clark and into the intersection at which Ms. Cervantes was injured. The chase had not been over 'for over twenty full seconds' as the City claims; Officer Sotello was in chase." Cervantes did not argue to the trial court that either Potter or Ramirez were chasing or pursuing Garcia immediately before the collision. Rather, she argued that Sotello's involvement somehow continued the pursuit initiated by Potter and hinged her causation argument on the collective action of the officers in conducting the pursuit.

16

exceeding 110 miles per hour. Perez followed Hillis onto South Central Expressway. At the 'High Five' overpass, Hillis entered the eastbound ramp to Interstate 635. Hillis lost control of his motorcycle on the ramp, causing him and his passenger to fall off the overpass and to sustain fatal injuries.

308 S.W.3d at 528–29.

The *Hillis* court then reasoned that "the only actual cause of Hillis's accident was his own decision to attempt to exit to eastbound Interstate 635 at a reckless rate of speed. At most, Perez's use of his police car only furnished the condition that made Hillis's accident possible." *Id*. at 534. Likewise, here, the only actual cause of the accident was Garcia's own decision to run a stop sign after Potter and Ramirez had terminated their pursuit. At most, any conduct by the police during the terminated pursuit only furnished the conditions that made the accident possible. *See id*. As with the pursuing officer in *Hillis*, here, "[a]t the time of the accident, [Potter and Ramirez's] operation of [their] vehicles was so physically and temporally separated from [Garcia's car] that, as a matter of law, [the] operation of [their] vehicle[s] did not actually cause [Cervantes's] accident." *Id*.

Accordingly, we conclude that Cervantes's jurisdictional evidence fails to raise a question of fact regarding causation, and as a matter of law, the accident did not arise from Potter or Ramirez's use of their vehicles, who are the only employees named in Cervantes's petition. *See id*.; *see also Herrera*, 2017 WL 929483, at *3 ("Thus, because appellees' evidence does not raise a question of fact regarding causation, and as a matter of law, the accident did not arise from Officer Gonzalez's use of his vehicle, the trial court erred in denying the City's plea to the jurisdiction.").[7]

---

[7] Having overruled Cervantes's first issue, we need not address her arguments regarding the

17

**B.       Sotello**

Cervantes does not seriously dispute that Potter and Ramirez had terminated their pursuit and were not in the immediate vicinity of the collision. Instead, she hinges her causation argument on Sotello's conduct, interpreting it as a continuation of the pursuit initiated by Potter. However, the jurisdictional evidence negates this. In particular, in one of her own filings in the trial court, Cervantes included a picture of the collision, which was captured by Potter's dashcam footage, which is reproduced below, including a circle superimposed on the image by Cervantes showing where Garcia's white Jeep Grand Cherokee landed on top of Cervantes's maroon Nissan Altima:



Sotello's dashcam footage, however, clearly shows that at 11:36:53 p.m., at the precise moment of the collision, he was in the process of reversing and turning his unit around to follow Garcia and was not facing the same direction as him:

emergency exception under the TTCA. *See* TEX. R. APP. P. 47.1.

18



In fact, when Sotello finally turns his unit around fully and starts accelerating, he is much further away from the collision than Potter, with the collision barely visible:



As the evidence shows, by the time that Sotello was fully turned around and facing the same direction as Garcia, the accident had already occurred. Thus, in no way can Sotello be said to have "chased" or "pursued" or "followed" Garcia before the collision, at least not consistent with ordinary English usage. *See Burrage v. United States*, 571 U.S. 204, 211 (2014) (noting that the traditional understanding of but-for causation requires

19

that a putative cause be "an antecedent but for which the result in question would not have occurred" (citation omitted)); *see also Pursue,* BLACK'S LAW DICTIONARY (12th ed. 2024) (defining "pursue" as, among other things, "[t]o follow persistently in order to seize or obtain; to chase or hunt"); *Yeager v. State*, 104 S.W.3d 103, 106 (Tex. Crim. App. 2003) (en banc) (noting that the dictionary defines "'pursue' to mean, among other things, 'follow' or 'chase'" (citations omitted)).[8] Accordingly, we disagree with Cervantes that Sotello's actions are relevant to assessing whether Potter or Ramirez caused the accident.

Nor are we persuaded by Cervantes's proposed theory of collective liability under the TTCA, by which one officer's negligent conduct can be imputed to all officers engaged in the same pursuit.[9] To the extent this presents a separate issue, Cervantes cites no case law or authority endorsing such a theory. *See* TEX. R. APP. P. 38.1(i); *Harvel v. Tex. Dep't of Ins.-Div. of Workers' Comp.*, 511 S.W.3d 248, 253 (Tex. App.—Corpus Christi–Edinburg 2015, pet. denied) ("An issue on appeal unsupported by argument or citation to any legal authority presents nothing for the court to review."); *Valadez v. Avitia*, 238 S.W.3d 843, 845 (Tex. App.—El Paso 2007, no pet.) ("Failure to cite legal authority or provide substantive analysis of the legal issue presented results in waiver of the complaint.").

---

[8] Although not dispositive, we further note that the CCPD pursuit policy defines "pursuit" as "*an active attempt* by a police officer . . . to apprehend one or more occupants of another moving vehicle[.]" (Emphasis added).

[9] For example, Cervantes nowhere alleges that Sotello engaged in wrongful conduct that resulted in the injuries to Cervantes. Rather, her position is that "*Sotello continuing the reckless chase* is relevant to whether the other named officers had stared and had continued to engage together with Sotello in the dangerous pursuit with their vehicles." (Emphasis added).

Further, imposing liability in such a situation would not be consistent with the text of the TTCA, which provides that governmental immunity is waived only from "personal injury . . . caused by *the wrongful act or omission or the negligence* of an employee acting within the scope of his employment[.]" Tex. Civ. Prac. & Rem. Code Ann. § 101.021(1) (emphasis added); *see* Tex. Gov't Code Ann. § 311.023(5) (noting that, among other factors, courts may consider the "consequences of a particular construction" when construing a statute). Further, and more fundamentally, the TTCA does not waive governmental immunity for the wrongful conduct of groups or collectives; rather, it waives immunity for the conduct of *individuals*. *See* Tex. Civ. Prac. & Rem. Code Ann. § 101.021(1) (waiving immunity for the wrongful conduct of an "employee acting within the scope of his employment"); *see* also *Chatha*, 381 S.W.3d at 513; Tex. Gov't Code Ann. § 311.034.

Accordingly, we reject Cervantes's argument that we must take Sotello's actions into consideration when determining whether the use of a vehicle by either Potter or Ramirez, the only individual employees named in the petition who are alleged to have acted negligently, "actually caused the injury." *Whitley*, 104 S.W.3d at 543.

## IV. CONCLUSION

We affirm the trial court's order granting the City's plea to the jurisdiction.

L. ARON PEÑA JR.
Justice

Delivered and filed on the
18th day of June, 2025.

21